

Villanova University School of Law Digital Repository

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-9-2004

# USA v. Rivera

Precedential or Non-Precedential: Precedential

Docket No. 02-3067

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Rivera" (2004). *2004 Decisions.* Paper 960.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/960

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

No. 02-3067

UNITED STATES OF AMERICA

v.

ISAAC RIVERA,
Appellant

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT
FOR THE DISTRICT OF
NEW JERSEY

District Court Judge:
Honorable Jerome B. Simandle

(D.C. No. Cr. 01-373-05)

Argued: December 4, 2003

Before: SLOVITER and ALITO, Circuit
Judges, and OBERDORFER,* District
Judge.

(Opinion Filed: February 9, 2004)

_____

* The Honorable Louis F.
Oberdorfer, Senior District Judge for the
District of Columbia, sitting by
designation.

*Counsel for Appellant*

Clayton A. Sweeney, Jr. (Argued)
P.O. Box 55441
Philadelphia, PA 19127-5441

*Counsel for Appellee*

Christopher J. Christie
  United States Attorney
George S. Leone
  Chief, Appeals Division
970 Broad Street, Room 700
Newark, N.J. 07102-2535

Norman Gross (Argued)
  Assistant United States
  Attorney
United States Courthouse
401 Market Street, Fourth Floor
Camden, N.J. 08101-2098

OPINION OF THE COURT

OBERDORFER, Senior District Judge:

Isaac Rivera appeals from his
sentence after he pled guilty pursuant to
a plea agreement with the United States.
For the reasons stated below, we hold
that the government breached that
agreement and vacate the sentence. We
then follow the well-established
procedure of remanding to the district
court for resentencing.

1

## I.

From approximately June 2000 until on or about June 5, 2001, Rivera[1] led a drug trafficking conspiracy that imported kilogram-quantities of cocaine powder from his suppliers in Puerto Rico, converted some of that powder into cocaine base, and distributed the cocaine and cocaine base in Camden, New Jersey. On October 9, 2001, a federal grand jury returned a two-count indictment against Rivera. Count One charged him with conspiracy to distribute and to possess with intent to distribute more than 50 grams of cocaine base and more than five kilograms of cocaine powder in violation of 21 U.S.C. § 846. Count Two charged possession with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). On November 7, 2001, Rivera and the United States entered into an agreement which provided, among other things, that Rivera would plead guilty to Count One of the indictment and the United States would dismiss Count Two.

The dispute on appeal focuses on the provisions of the plea agreement addressing sentencing, in particular a section titled "Stipulations." App. at 60(a). That section stated that the United States and Rivera "agree to stipulate at sentencing to the statements set forth in attached Schedule A." Id. Schedule A, in turn, provided in its first sentence that the United States and Rivera "agree to stipulate at sentencing to the statements set forth below, subject to the conditions in the attached plea agreement." Id. at 64(a). Schedule A also stated that the base Offense Level was 38. By way of adjustment, however, Rivera would receive a two-level Offense Level reduction if his "acceptance of responsibility continue[d] through sentencing." Id. He was to receive an additional one-level decrease if the Offense Level set by the district court was 16 or greater. Id. Section 5, the provision focused on by the parties on appeal, stated, "In accordance with the above, the applicable guidelines total offense level is 35." Id. (emphasis supplied).

The plea agreement also stated some conditions: that the "sentence to be imposed upon Isaac [Rivera] is within the sole discretion of the sentencing judge" and that the government "cannot and does not make any representation or promise as to what guideline will be found applicable . . . or what sentence Isaac [Rivera] will ultimately receive." App. at 59(a). The plea agreement further stated that "[e]xcept as otherwise

---

[1] The underlying criminal indictment named Rivera as Isaac Burgos a/k/a Isaac Bonilla a/k/a Isaac Rivera. At the change of plea hearing, by the consent of both parties, the district court granted a motion to deem changed all pleadings and documents to reflect that the defendant (now appellant)'s true name is Isaac Rivera, with Burgos and Bonilla listed as aliases.

provided in this agreement, [the United States] reserves its right to take any position with respect to the appropriate sentence to be imposed on [Rivera] by the sentencing judge." Id. at 59(a)-60(a).

On February 10, 2002, the United States Probation Office advised the prosecution, Rivera, and the court that Rivera's leadership "role in the conspiracy warrants a four level increase, pursuant to [USSG] § 3B1.1(a)." Presentence Report at 10. Accordingly, the report called for an Offense Level of 39, while recognizing that "a 4+ adjustment [] is contrary to the plea agreement, in that the plea agreement specifies a total offense level of 35." Id. at 19. On April 18, 2002, Rivera filed objections in which he stated regarding the recommendation that the Offense Level be set at 39: "such an application is repugnant to the defendant's plea agreement." App. at 132(a).

The United States' attorney replied to Rivera's objections by filing a letter brief with the district court. The letter argued that Rivera's assertion "constitutes a clear misapplication of the Plea Agreement," and that, regarding the defendant's role within the conspiracy, "the United States is not precluded from arguing that the defendant is deserving of a role enhancement." Id. at 143(a). Rivera did not file a response to the government's letter.

On July 19, 2002, the district court conducted the sentencing hearing.

The court asked: "Does the government take any position with regard to role in the offense?" App. at 29(a). By way of allocution, the prosecutor responded, "we stand by the probation officer's conclusions. . . . The notion that because Schedule A refers to a specific offense level . . . perhaps it's a little bit of poor draftsmanship. . . . Schedule A is . . . silent [] as . . . to any other upward or downward adjustments." Id. at 29(a)-30(a).

Ruling orally from the bench at the sentencing hearing, the district court stated:

> the parties recognized at the time of their stipulation that there may be other Guidelines that have a bearing upon what the appropriate sentence should be, and that they had not reached agreement as to any other Guidelines, and . . . The parties do reserve their rights to argue mitigating or aggravating circumstances that are not covered by their stipulations. . . . The probation department has proposed that there be a four point enhancement for the defendant's leadership role in the conspiracy. The parties' stipulation is silent as to any adjustment for role. The parties'

stipulation does not constitute an agreement that there shall be no role adjustment.

But even if it is interpreted as at least a silent agreement that the proper Total Offense Level is 35 as Paragraph 5 of the stipulations recites, the Court nonetheless has to look at the facts of the case and to determine whether the Sentencing Guidelines indicate that any role adjustment, either upward or downward, is appropriate in this case.

Id. at 27(a)-28(a) (emphasis supplied).

The district court ultimately adopted the factual findings and recommendations of the Presentence Report and, accordingly, set the applicable Offense Level to 39 and sentenced Rivera to a 324 months term of imprisonment and supervised release of five years. This appeal followed.

## II.

Rivera's principal argument is that the United States' allocution breached the plea agreement by advocating to the sentencing judge that the four-level enhancement recommended by the Presentence Report be added to the applicable offense level.[2] Our analysis of that argument proceeds in three parts. We first discuss the standard of review, then the merits of Rivera's claim that the United States breached the plea agreement, then the issue of remedy.

## A.    Standard of Review

The threshold question is the applicable standard of review. We conclude that our review is *de novo*. The

---

[2]    Rivera raises five additional arguments: that (1) the district court erred in failing to hold that the government breached its duty to consider all of Rivera's cooperation under USSG § 5K1.1; (2) 21 U.S.C. §§ 841(B)(1)(A)-(B) are facially unconstitutional with respect to cocaine and cocaine base; (3) USSG § 3B1.1(a) is unconstitutional under Apprendi v. New Jersey, 530 U.S. 466 (2000), because it increases a mandatory minimum sentence upon judicial fact-finding under a preponderance of the evidence standard of proof; (4) USSG § 3B1.1 is unconstitutional under Apprendi and Ring v. Arizona, 536 U.S. 584 (2002), because it authorizes punishment beyond the facts established by the offense of conviction or stipulations; and (5) that applying 18 U.S.C. § 3742 (g)(2) on remand would violate the constitutional separation of powers doctrine. We resolve the appeal on the issue of breach of plea agreement and do not reach these additional arguments.

4

United States argues that Rivera failed to raise the issue below. It cites United States v. Thornton, 306 F.3d 135, 137 (3d Cir. 2002), for the proposition that Rivera's claim for breach of plea agreement by the United States is therefore subject to the "plain error standard of review on appeal." Aple's Br. at 19. However, Thornton involved a defendant's claim that a district court violated the plea agreement by considering evidence that the plea agreement had stipulated would be excluded for the purposes of sentencing. See 306 F.3d at 1357. In contrast, in a case where the defendant, like Rivera, claimed breach of the plea agreement by the prosecution, and the defendant "concede[d] that he did not raise this objection in the district court," this court has stated, without qualification, that "whether the government violated the terms of a plea agreement is a question of law subject to plenary review." United States v. Queensborough, 227 F.3d 149, 156 (3d Cir. 2000) (emphasis supplied) (citing United States v. Moschahlaidis, 868 F.2d 1357, 1360 (3d Cir. 1989)). Accord, e.g., United States v. Lawlor, 168 F.3d 633, 636 (2d Cir. 1999); United States v. Courtois, 131 F.3d 937, 938 & n.2 (10th Cir. 1997).[3]

The government argues that our statement in Queensborough is not controlling because we ultimately held that there was no error and because it is not made clear in that decision whether the defendant made any argument that the plain error standard of review should apply. This reading of Queensborough is too narrow: in adopting a "plenary" framework of review, rather than the discretionary four-plus step plain error review of United States v. Olano, 507 U.S. 725 (1993), and its progeny, we did not reserve the question of what standard of review controlled. Nor did we qualify our statement that the applicable review was "plenary" in any way. Our law defines "plenary" as *de novo*. See Dixon Ticonderoga Co. v. Estate of O'Connor, 248 F.3d 151, 161 (3d Cir. 2001). Accordingly, even if Rivera's objection to the Presentence Report did not effectively raise the issue before the district court,[4] our review must be *de*

---

See 227 F.3d at 156; see also United States v. Peterson, 225 F.3d 1167, 1170 n.2 (10th Cir. 2000) (collecting cases on either side of the circuit split).

[4]    We note, parenthetically, that the United States and the sentencing judge were on notice from Rivera's objections, filed before the sentencing hearing, that Rivera viewed the adoption of the probation officer's recommended departure from the plea agreement's stipulated 35 Offense Level (or an allocution or sentence adopting that recommendation) as "repugnant to [the]

---

[3]    As we observed in Queensborough, a number of other courts of appeals have reviewed claims that the government breached a plea bargain not raised before the district court under a clearly erroneous or plain error standard.

5

*novo*.[5]

Well-established, additional principles confirm the propriety of *de novo* review of Rivera's claim. First, "[b]reach of a plea agreement by a prosecutor [] strikes at public confidence in the fair administration of justice and, in turn, the integrity of our criminal justice system in which a vast number of cases are resolved by plea agreement." Dunn, 247 F.3d at 463. Second, because they relieve the government of the need to prepare and conduct a trial, "[p]lea agreements, though arising in a criminal context, are analyzed under contract law standards." United States v. Nolan-Cooper, 155 F.3d 221, 236 (3d Cir. 1998). Third, the United States has an obligation to "'adhere strictly to the terms of the bargain it strikes with defendants.'" Queensborough, 227 F.3d at 156 (quoting Moschahlaidis, 868 F.2d at 1361). "Because the defendant, by entering into the plea, surrenders a number of h[is] constitutional rights, 'courts are compelled to scrutinize closely the promise made by the government in order to determine whether it has been performed.'" Nolan-Cooper, 155 F.3d at 236 (quoting United States v. Hayes, 946 F.2d 230, 233 (3d Cir. 1991)). Fourth, in determining whether the plea agreement has been breached, we must determine "whether the government's conduct is inconsistent with what was reasonably understood by the defendant when entering the plea of guilty." United States v. Badaracco, 954 F.2d 928, 939 (3d Cir. 1992) (internal quotation marks omitted). Finally, "[i]n view of the government's tremendous bargaining power, we will strictly construe the text against it" as the drafter of plea agreements to the extent the agreement is ambiguous. United States v. Baird, 218 F.3d 221, 229 (3d Cir. 2000). Accordingly, the United States may not rely upon a 'rigidly literal' approach to the construction of the terms of the plea agreement." Nolan-Cooper, 155 F.3d at 236 (citing Moschahlaidis, 868 F.2d at 1361).

---

plea agreement." Thus the judge must have known, or is chargeable with knowledge, that Rivera thought that a 39 Offense Level was contrary to the plea agreement. The availability of *de novo* review on appeal regardless of whether Rivera formally objected to the government's advocacy makes it unnecessary for us to pursue the question of whether this indirect notice entitles Rivera to *de novo* review on independent grounds.

[5] According to the government, extending *de novo* review "to areas outside the breach context would eviscerate the contemporaneous objection requirement." Aple's Br. at 36. However, our statement of the applicable standard of review in Queensborough was limited to the plea bargain context and the important concerns it implicates.

6

**B.      Merits of Rivera's Claim for Breach of Plea Bargain**

Rivera's argument that the government breached the plea agreement is straightforward and persuasive. The plea agreement stated: "In accordance with the above, the applicable guidelines total offense level is 35."[6] The statement by the United States' attorney that "we stand by the probation officer's conclusions," App. at 29(a) – which included the recommendation that the Offense Level should be 39 – was inconsistent with the stipulation entered into by the United States that the applicable Offense Level would be 35. By, in effect, endorsing the Probation Office's recommendation of an Offense Level of 39, the government breached its agreement that the stipulated applicable Offense Level would be 35.[7]

The government advances five (closely related) arguments in favor of the district court's interpretation of the plea agreement, none of which we find persuasive. The government's most forceful argument is that the provision in the plea agreement – that "except as otherwise provided in this agreement, [the United States] reserves its right to take any position with respect to the appropriate sentence to be imposed on Isaac [Rivera] by the sentencing judge" – permitted the government to advocate a role enhancement. However, this argument, based on the broadly worded exception, runs counter to, and is therefore trumped by, the specific stipulation in the agreement. See Corbin on Contracts § 24.23 (revised ed. 1998) ("If the apparent consistency is between a clause that is general and broadly inclusive in nature and one that is more limited and specific in its coverage, the more specific should . . . be held to prevail over the more general term"); see also Restatement (Second) of Contracts § 203. Because the Offense Level was specifically stipulated to, whereas the government's right to advocate a role

---

[6]      Given this language, it is difficult to understand how the district court arrived at the conclusion that there may have been a "silent agreement that the proper Total Offense level is 35." App. at 25(a) (emphasis supplied).

[7]      The possibility that the district court might have adopted the probation officer's findings and recommendations even had the government not urged their adoption is not relevant to the question of breach. To be entitled to remand, Rivera need only show that the United States breached its agreement. See Nolan-Cooper, 155 F.3d at 236 ("the

doctrine that the government must adhere to its bargain in the plea agreement is so fundamental that even though the government's breach is inadvertent and the breach probably did not influence the judge in the sentence imposed, due process and equity require that the sentence be vacated.") (internal quotations omitted).

enhancement was not, the government's endorsement of an enhancement that would raise the Offense Level above the stipulated level contravened the plea agreement. Moreover, to the extent there is ambiguity caused by the "little bit of poor draftsmanship" conceded by the prosecutor, we must construe the agreement against the government as drafter. See Baird, 218 F.3d at 229.[8]

Second, the government argues that an interpretation that binds it to the stipulation in Paragraph 5 renders "superfluous" the language in Paragraph 5 that the stipulation to the Offense Level being 35 was "in accordance with the above." Aple's Br. at 40. Nor is this argument persuasive. The foregoing language may be fairly construed as having independent, non-"superfluous" meaning: it explains the steps by which the stipulation reduced the Offense Level from 38 to 35 (two-level reduction for acceptance of responsibility; one level reduction if the court set the Offense Level at 16 or higher).

Third, and relatedly, the government asserts that the position of paragraph 5 in Schedule A, coming immediately after the paragraphs which established the components of the calculation set forth in that paragraph, "suggests that ¶ 5 was intended to explain and justify those . . . provisions, rather than to bind a Total Offense Level [of] 35 for all purposes." Aple's Br. at 40 (emphasis supplied). We agree, as mentioned, that the "Stipulations" section's function was, in part, to explain the calculation of the applicable Offense Level. However, this does not make the stipulation non-binding. To the extent the United States, as the drafting party, desired to qualify the stipulation, it could have included such language. But it did not. And, again, to the extent that this provision is ambiguous – and it is at least ambiguous – we construe the provision as effecting a binding obligation on the government. Cf. Baird, 218 F.3d at 229.

Next, argues the government, the district court's construction of the plea agreement should be upheld because "there is no controlling judicial authority . . . which has held, even at this time, that language similar to that in this plea agreement forbade the government from advocating [] a role enhancement." Aple's Br. at 39. We reject this argument. That the construction of this plea agreement's stipulation language, or language similar to it, has not apparently been analyzed in a published opinion is

---

[8] Perhaps recognizing that the provision at issue here created at least ambiguity on the question of the government's ability to, consistent with the plea agreement, advocate for enhancements not specified in the agreement, the government concedes that "[t]he United States Attorney's Office has subsequently re-drafted its form cooperating plea agreement to omit any stipulation regarding the Total Offense Level." Aple's Br. at 26 n.8.

no bar to our analysis of the agreement. Significantly, the government identifies no authority, controlling or otherwise, that has sanctioned role advocacy where the plea agreement was silent regarding role enhancement and affirmatively stipulated a particular Offense Level.

Finally, the government urges us to draw an inference adverse to Rivera from his failure to object before the district court to the statement in the government's letter brief concerning an enhancement for role. The government cites language from a recent opinion by a sister circuit court that the appellant's "failure to object at sentencing [that the government breached the plea agreement] is but further evidence that his expectations of the government were satisfied." United States v. Werner, 317 F.3d 1168, 1170 (10th Cir. 2003). However, we are reluctant to draw any such inference from silence without more. Further, the government's argument is not supported by the record. Far from being satisfied, Rivera firmly objected to the probation officer's recommendation of an Offense Level of 39 as being "repugnant to the defendant's plea agreement." Although not a challenge to the government's advocacy of a role enhancement, this objection, filed in the district court subsequent to the execution of the plea agreement, but over three months before sentencing, suggests quite clearly that Rivera did not accept the theory that the plea agreement authorized the government to advocate for a role

enhancement. See App. at 131(a).

## C. Remedy

The final issue concerns what remedy is appropriate. "When the government breaches a plea agreement, the general rule is to remand the case to the district court for a determination whether to grant specific performance or to allow withdrawal of the plea." Nolan-Cooper, 155 F.3d at 241. "It is also the rule in this circuit that if specific performance is the applicable remedy, the defendant must be re-sentenced by a different district judge than the one who presided over the now-vacated original sentence." Id.[9] Consistent with this Circuit's practice, the parties agree that if we find, as we have, a breach of the plea agreement, the case should be remanded for resentencing before a different judge. See Aplt's Br. at 48; Aple's Br. at 50 n.20; Nolan-Cooper, 155 F.3d at 241 (in remanding for reassignment and resentencing, explaining that "'[s]pecific performance is feasible and is a lesser burden on the government and defendant'") (quoting United States v. Kurkuler, 918 F.2d 295, 302 (1st Cir. 1990)). Accordingly, we will vacate the sentence imposed and remand the case to the district court for resentencing before

---

[9] By directing resentencing by a different District Judge, we do not suggest that the original District Judge could not resentence appropriately. We are merely following our prior opinions.

9

a different judge.

### III.

"It is very well to say that those who deal with the Government should turn square corners.  But there is no reason why the square corners should constitute a one-way street." <u>Federal Crop Ins. Corp. v. Merrill</u>, 332 U.S. 380, 387-88 (1947) (Jackson, J., dissenting). For the reasons set forth above, we hold that the United States breached the plea agreement, VACATE the sentence, and REMAND to the district court for reassignment to a different judge and resentencing.