

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-7-2005

# USA v. Craft

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2499

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Craft" (2005). *2005 Decisions.* Paper 896.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/896

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-2499

_____

UNITED STATES OF AMERICA

v.

ERIC CRAFT,

Appellant.

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 02-cr-00011)
District Judge:  The Honorable William W. Caldwell

_____

Submitted Under Third Circuit LAR 34.1(a)
June 27, 2005

BEFORE: NYGAARD, SMITH, and FISHER, Circuit Judges.

(Filed July 7, 2005)

_____

OPINION OF THE COURT

_____

NYGAARD, Circuit Judge.

Appellant Eric Craft pleaded guilty to causing the death of a person through use of a firearm, in violation of 18 U.S.C. § 924(j) and was sentenced to 480 months' imprisonment. He now claims that the Government breached the plea agreement and that the District Court erred in sentencing him. We will affirm.

**I.**

Upon finding the body of Lovelle Gamble shot in the back of the head, Harrisburg Police began an investigation into his death. The console of the vehicle he was in had been ripped from the floor, the glove compartment was open, and Gamble's pockets were turned inside-out. After dusting for fingerprints, police found three fingerprints belonging to Eric Craft. During the investigation, police learned from a confidential informant that Craft was a drug dealer from New Jersey who claimed to have shot Gamble and stolen money and drugs from a hidden compartment in Gamble's car.

While the investigation into the Gamble murder was pending, Craft was indicted for numerous federal drug and gun related offenses.[1] At that point, agents interviewed Craft and he admitted to being present at the shooting of Gamble, but claimed Ernest Hedgespeth shot him. Craft failed a polygraph examination about who shot Gamble. Craft then claimed Jeffery Holland shot Gamble. Immediately before a second polygraph, Craft spoke with his attorney, and then informed investigators that he actually shot Gamble.

Craft told investigators that he needed to make quick money so he agreed to participate in a robbery with Holland and Holland's brother Ricky. Holland then set up a meeting with Gamble, allegedly to buy crack cocaine. At the meeting, Jeffery Holland and Craft both ended up in the car, with Holland in the front and Craft in the back. The

---

[1] Originally, Craft was indicted in a two count indictment and charged with making false statements in connection with the acquisition of firearms, in violation of 18 U.S.C. § 922(a)(6) and possession of firearms by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). While these charges were pending, the Government secured a 16-count superceding indictment that charged Craft with the following: conspiracy to distribute 50 or more grams of crack cocaine and 200 or more grams of heroin, in violation of 21 U.S.C. § 846; distribution of 50 or more grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); distribution of 100 or more grams of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(a)(B); two counts of carrying or using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c); making false statements in connection with the acquisition of firearms, in violation of 18 U.S.C. § 922(a)(6); possession of firearms by an armed career criminal, in violation of 18 U.S.C. §§ 922(g)(1); conspiracy to make false statements in connection with the acquisition of firearms, in violation of 18 U.S.C. § 371; and seven additional counts of making false statements in connection with the acquisition of firearms, in violation of 18 U.S.C. § 922(a)(6).

3

two then pulled out their guns and demanded Gamble's money and drugs while Ricky Holland approached the driver's side door.  Following a struggle, Craft grabbed Gamble and shot him in the back of the head, killing him.

Craft then put on gloves, moved the body to the passenger's seat, and drove to another location.  They then ripped open the console and stole the drugs and cash contained inside a hidden compartment.  Craft then left the keys in the ignition, took $1,000 from the glove compartment, and tried to wipe away any fingerprints.

## II.

In exchange for pleading guilty to causing the death of a person through use of a firearm, the Government agreed to drop all charges pending under the 16-count indictment.  Craft agreed that he would waive his right to an indictment by a grand jury and "plead guilty to a felony information which will be filed against the defendant." According to the agreement, the information was to charge Craft with "a violation of Title 18, United States Code, Section 924(j), (causing the death of another by use of a gun during a crime of violence or drug trafficking offense)."  Section 924(j) of the United States Code provides:

> A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall—
> (1) if the killing is murder (as defined in section 1111), be punished by death or imprisonment for any term of years or life; and
> (2) if the killing is manslaughter (as defined in section 1112), be punished as provided in that section.

18 U.S.C. § 924(j).

4

When the Government filed its superseding information, it charged that Craft did "through the use of said firearm, <u>murder</u> Lavelle Gamble a/k/a/ 'Boston'. All in violation of Title 18, United States Code, Section 924(j)." (emphasis added). This superseding information was filed on September 11, 2002. Craft entered his guilty plea the next day, September 12, 2002. At his plea hearing, the Court drew attention to the fact that he was "entering a plea of guilty to a superseding information that was filed yesterday." The Court then asked the Government what the penalties were for the offense. The Government counsel stated that Section 924(j) "in essence tracks the penalties for murder under Section 1111 of Title 18." The Government went on to discuss the difference between first degree and second degree murder. At no time was manslaughter discussed. Craft then pleaded guilty.

Later at his sentencing, his counsel attempted to argue that he should be sentenced based on second degree murder. The Court rejected the argument finding, "I'm persuaded not only by a preponderance of the evidence but beyond any doubt that I'm dealing here with a felony murder situation."

Craft now claims that the Government breached the plea agreement because he did not agree to plead guilty to <u>murder</u>, only to either murder or manslaughter under Section 924(j). He argues that because of the Government's breach, we should interpret the agreement in the way that most favors him—a conviction for Manslaughter-Criminal Negligence. Whether the Government has breached a plea agreement is a question of law

5

subject to plenary review, even where the defendant did not raise it below.  *United States v. Rivera*, 357 F.3d 290, 293–94 (3d Cir. 2004).

Plea agreements, though arising in criminal law, are analyzed under contract law. *United States v. Nolan-Cooper*, 155 F.3d 221, 236 (3d Cir. 1998).  Thus, we look to whether the Government's conduct is consistent with what was reasonably understood by the defendant when entering a plea of guilty.  *Id.*  Here, when Craft entered his plea of guilty, he understood he was pleading guilty to Section 924(j) murder, not manslaughter, because the superceding information had already been filed.

During the plea colloquy, it was clear that the Government believed this to be a case of murder.  The Government attorney described the penalties for "murder," discussed the difference between second and first degree murder, and gave the Government's position that this was a first, not second, degree murder case.  The Court informed Craft that the maximum penalty was life imprisonment—the murder penalty—of which Craft said he was aware.  The Government recited facts establishing that the killing took place during a robbery, and both Craft and his attorney agreed with the Government's depiction of the facts.  After all of this, the Court asked how Craft wished to plead and he said, "guilty."  This is not a case where a defendant pleaded guilty with one expectation and a subsequent breach by the government altered that expectation.

6

At the time Craft pleaded guilty, he did so knowing he was pleading guilty to a murder charge.[2]  Accordingly, we will affirm his conviction.[3]

### III.

Finally, Craft objects to the imposition of his sentence under *United States v. Booker*, 543 U.S. __, 125 S. Ct. 738 (2005).  Craft waived his right to appeal his sentence when he entered his guilty plea.  Therefore, he cannot now attempt to take advantage of the Supreme Court's decision in *Booker*.  *United States v. Lockett*, No. 04-2244, 2005 U.S. App. LEXIS 7784, at *17 (3d Cir. May 5, 2005).  Accordingly, Crafts' sentence is affirmed.

---

[2]    Even if we were to adopt Craft's argument that he did not necessarily intend to plead guilty to murder when he signed the written agreement with the Government, the agreement allowed for modification on the record in open court.  Thus, when he manifested a clear intent to plead guilty to the murder charge in open court it clarified under which provision of 924(j) he was pleading guilty.

[3]    Because we find that Craft pleaded guilty to murder, we also reject his claim that he did not waive his right to have a jury decide whether he was guilty of murder or manslaughter.