

Villanova University School of Law Digital Repository

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-4-2006

# USA v. Shelton

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1243

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Shelton" (2006). *2006 Decisions*. Paper 1158.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1158

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-1243

_____

UNITED STATES OF AMERICA

v.

RAYMOND SHELTON,
                              Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Crim. Action No. 02-00189
(Honorable John R. Padova)

_____

Submitted Under Third Circuit LAR 34.1(a)
April 25, 2006

Before: FUENTES, STAPLETON, and ALARCÓN,[*] *Circuit Judges*

(Filed: May 4, 2006 )

_____

OPINION OF THE COURT

_____

---

[*]The Honorable Arthur L. Alarcón, Senior Judge, United States Court of Appeals
for the Ninth Circuit, sitting by designation.

ALARCÓN, *Circuit Judge*.

Mr. Shelton entered a plea of guilty for violating 18 U.S.C. §§ 371, 846, 922(g), and 922(o) and the District Court sentenced him to 168 months imprisonment. Mr. Shelton appeals from his sentence on the grounds that the Government breached the plea agreement and that the District Court erred when it independently determined the base offense level under the United States Sentencing Guidelines ("Sentencing Guidelines"). We vacate and remand for resentencing by another district court judge.

## I

In October 2002, Mr. Shelton entered into a plea agreement ("Agreement") with the Government wherein he pled guilty to conspiracy to possess and transfer a machine gun, conspiracy to distribute ecstacy, possession of a firearm by a convicted felon, and possession and transfer of a machine gun in violation of 18 U.S.C. §§ 371, 846, 922(g), and 922(o). In the Agreement, the Government stipulated that the firearms offenses to which Mr. Shelton pled guilty would "carry a base offense level under the Sentencing Guidelines of 20." The presentence investigation report ("PSR") calculated a base offense level of 26 for those same offenses. At Mr. Shelton's first sentencing hearing, in January 2003, the Government took the position that the PSR correctly calculated the base offense level and asked for a "substantial sentence." The District Court found that the base offense level for the firearms offenses was 26 and sentenced Mr. Shelton to 188 months imprisonment. Mr. Shelton appealed his sentence on the grounds that the

Government breached the Agreement and that the district court erred in adopting the PSR's calculation of his base offense level at 26 for his § 922(g)(1) violation because it was erroneously calculated.

In March 2004, this Court vacated Mr. Shelton's sentence, concluding that the Government breached the Agreement by stating that the PSR, rather than the Agreement, correctly stated the offense level and "asking for a substantial sentence." *United States v. Shelton*, 91 Fed. Appx. 247, 248 (3d Cir. 2004) ("*Shelton I*"). On remand, the District Court resentenced Mr. Shelton to a term of 168 months imprisonment from which he now appeals.

## II

## A

Mr. Shelton argues that the Government breached the Agreement at the resentencing hearing by advocating a base offense level higher than the one stipulated to in the Agreement. Whether the Government breached its plea agreement with a defendant is a question of law subject to a de novo review. *United States v. Rivera*, 357 F.3d 290, 294 (3d Cir. 2000).

A plea agreement is analyzed under contract law principles. *United States v. Moscahlaidis*, 868 F.2d 1357, 1361 (3d Cir. 1989). "Because the defendant, by entering into the plea, surrenders a number of [his or] her constitutional rights, 'courts are compelled to scrutinize closely the promise made by the government in order to determine

3

whether it has been performed.'" *United States v. Nolan-Cooper*, 155 F.3d 221, 236 (3d Cir. 1998) (quoting *United States v. Hayes*, 946 F.2d 230, 233 (3d Cir. 1991)).

With these standards in mind, this Court performs a three-step analysis to determine whether the Government has breached a plea agreement. *Moscahlaidis*, 868 F.2d at 1360. First, the relevant terms of the plea agreement and alleged misconduct of the Government are identified. *Id*. Second, this Court determines whether the government violated its obligations under the plea agreement by asking "whether the government's conduct is inconsistent with what was reasonably understood by the defendant when entering the plea of guilty." *United States v. Badaracco*, 954 F.2d 928, 939 (3d Cir. 1992) (quoting *United States v. Nelson*, 837 F.2d 1519, 1521-22 (11th Cir. 1988)). While "the Government need not endorse the terms of its plea agreements 'enthusiastically,'" *Id*. at 941 (quoting *United States v. Benchimol*, 471 U.S. 453, 455 (1985)), it is the rule of this Circuit that "the government must adhere strictly to the terms of the bargains it strikes with defendants." *Moscahlaidis*, 868 F.2d at 1361 (quotations omitted). Third, an appropriate remedy is fashioned for any violations that occurred. *Id*.

The Agreement states, in relevant part, that

> [t]he government and defendant agree and stipulate that the firearms offenses in Counts 5, 8, 11, 12 and 17 to which defendant is to plead guilty . . . carry a base offense level under the Sentencing Guideline of 20 pursuant to Section 2K2.1(a)(4)(B), because the offense involved a firearm described in 26 U.S.C. § 5845(a) and 18 U.S.C. § 921(a)(30) . . . .

4

Mr. Shelton argues that the Government breached the Agreement when it advocated that the court impose a sentence higher than that contemplated by the Agreement, namely, one that "fall[s] within the sentencing guideline range as determined by the Court, absent unusual circumstances."  Mr. Shelton contends that Government also breached the Agreement when it advised the District Court that it "would be wise to give heavy weight to the guidelines," knowing that the Sentencing Guidelines are now advisory, and knowing that Agreement provided for a base offense level lower than that recommended under the Sentencing Guidelines.  The Government maintains that it did not breach the Agreement because it stated to the District Court that it was bound by the plea agreement and "would make no recommendations inconsistent with that agreement."

The holding in *Rivera* is particularly instructive here.  In *Rivera*, this Court found that the Government breached the plea agreement when the prosecutor advocated that the total offense level recommended by the Probation Office be applied, even though it was higher than the offense level stipulated to in the plea agreement.  357 F.3d at 295.  The plea agreement stated that the "applicable guidelines total offense level is 35" while the Probation Office recommended an offense level of 39.  *Id.*  This court found that "[t]he statement by the United States' attorney that 'we stand by the probation officer's conclusions' . . . was inconsistent with the stipulation entered into by the United States that the applicable Offense Level would be 35."  *Id.*  Accordingly, this Court held that by "endorsing the Probation Office's recommendation of an [o]ffense [l]evel of 39, the

5

government breached its agreement that the stipulated applicable [o]ffense [l]evel would be 35." *Id.*

Similarly, in *Badaracco*, this Court held that "the government violated the spirit, if not the letter, of the plea agreement" when the it stipulated to defendant's minimal role in the plea agreement but argued at sentencing that he played more than a minimal role. 954 F.2d at 940-41. This Court rejected the Government's argument that it was merely exercising its reserved right under the plea agreement to inform the court of the "nature and extent" of Badaracco's activities, holding instead that the Government breached the plea agreement because its conduct was inconsistent with what Badaracco reasonably understood when he entered his guilty plea. *Id.* at 939; *see also Hayes*, 946 F.2d at 235 (Government breached the plea agreement where it promised to make no recommendation as to the specific sentence, and expressly "advocate[d] a sentence within the standard range of the guideline as to [one of the counts] and a lengthy period of incarceration on the [other] counts."); *Moscahlaidis*, 868 F.2d at 1361 (Government breached the plea agreement where it promised to take no position at sentencing but provided conclusory statements about Moscahlaidis' character because "such conclusions . . . amount to nothing less that a 'transparent effort to influence the severity' of the sentence") (quoting *United States v. Crusco*, 536 F.2d 21, 26 (3d Cir. 1976)).

Citing *Rivera*, this Court held in *Shelton I* that the Government breached the Agreement at the initial sentencing hearing when it stated that it believed the base offense

level was correctly calculated in the PSR, rather than in the Agreement, and asked for a "substantial sentence" because that position "conflicted directly with the government's unambiguous and specific Agreement stipulation that Shelton's base offense level was 20." *Shelton*, 91 Fed. Appx. at 248.

At Mr. Shelton's resentencing hearing, the Government stated that his sentence "should fall within the sentencing guideline range" – which was higher than the range contemplated by the plea agreement. Though the Government did state that it was "bound by the plea agreement," it violated the Agreement when it advocated a sentence higher than the range contemplated by the stipulated base level offense of 20, and stated that the court would be "wise to give heavy weight to the guidelines" even though they are now advisory and would result in a longer sentence.

Under *Rivera* and *Badaracco*, the Government's statements violated both the letter and the spirit of the Agreement because they advocated a higher base offense level than the one stipulated to in the Agreement, contrary to what Mr. Shelton reasonably understood the terms of the Agreement to be when entering the plea of guilty. *Rivera*, 357 F.3d at 295; *Badaracco,* 954 F.2d at 939-41. Even if the Government believed that the PSR, rather than the Agreement, correctly calculated the base offense level, it is required to exercise its "option of silence" rather than advocate a higher base offense level. *Nolan-Cooper*, 155 F.3d at 237. This is especially so where, as here, the

7

Sentencing Guidelines calculation information was part of the District Court's record and was discussed in the PSR. *Id*. at n.11.

The Government's contention that its comment that the sentence should fall within the sentencing guideline range was merely a "preliminary, general comment regarding the *Booker* decision" is unpersuasive. Not only was the Government's position on *Booker* unsolicited, it squarely contradicted the Government's agreement to advocate a base offense level of 20.

The Government also argues that the analysis differs here because some of its comments were made in response to the District Court's repeated questioning on the Government's view of the "correct base offense level and sentencing guideline range." This contention has been squarely rejected by this Court in *Nolan-Cooper*. 155 F.3d at 238 ("While such questions [from the court] may place the government in an uncomfortable situation, it still must inform the court that it cannot answer the question without breaching its plea agreement. Sometimes 'the better part of valor is discretion.'") (quoting William Shakespeare, *King Henry the Fourth, Part I*, act V, scene iv, line 12)).

Since Mr. Shelton does not wish to withdraw his plea, the appropriate remedy is specific performance of the Agreement which requires that sentence be vacated and remanded for resentencing by a different judge. *Nolan-Cooper*, 155 F.3d at 241 (if the defendant does not wish to withdraw the plea, specific performance is the remedy and the case must be remanded for full resentencing by a different judge).

**B**

Mr. Shelton's argument that this Court's order of specific performance of the Agreement in *Shelton I* obligated the District Court to impose a sentence reflecting the stipulated sentencing range of 77 to 96 months imprisonment is unavailing.

Mr. Shelton's Agreement states at ¶ 8 that "the Court may make factual and legal determinations that differ from [the] stipulations [herein] and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed." Additionally, Mr. Shelton agreed at his change of plea hearing that one of the terms of the Agreement was that the stipulations concerning the Sentencing Guidelines "are not binding upon the Court or upon the Probation Department." The District Court informed Mr. Shelton at the hearing that he would be sentenced in accordance with the Sentencing Guidelines and other applicable law, after considering the PSR. He was also informed that he would not be entitled to withdraw his guilty plea should the Court impose a sentence more severe than he expected or than was recommended by the Agreement. As this Court stated in *Badaracco*, when the Government fails to adhere to a plea agreement, "[i]t follows that specific performance is the only adequate remedy, *i.e.*, resentencing under conditions in which the *government* adheres to its plea agreement." *Badaracco*, 954 F.2d at 941 (emphasis added).

Based on the plea agreement, Mr. Shelton had a reasonable expectation that the Government, at least absent any basis for departure, would advocate a sentence, within

9

the guideline range obtained by starting with a base level of 20, which range the parties agree would be 77 to 96 months. On remand for resentencing, the Government shall not advocate a sentence beyond that range.

## C

In *Shelton I*, this Court rejected Mr. Shelton's contention that the PSR miscalculated his base offense level at 26 because it relied on the Sentencing Guidelines' definition of "felony conviction" rather than the statutory definition found in § 922(g)(1). In reaching its determination that the PSR's calculation was not erroneous, this Court stated that "the district judge's decision to adopt the PS[R]'s calculation of Shelton's base offense level of 26 . . . was correct." *Id*. at 249. This comment warrants clarification on two counts.

First, the holding applies only to the correctness of the calculation found in the PSR. It did not instruct the District Court to apply the base offense level of 26. Second, because *Shelton I* was decided prior to the rendering of *United States v. Booker*, 543 U.S. 220 (2005), when the Sentencing Guidelines were mandatory, the District Court erred in concluding at the post-*Booker* resentencing that it was bound by *Shelton I* to apply the PSR's base offense level of 26 because it was the "law of the case." In view of the advisory nature of the Sentencing Guidelines under *Booker*, the District Court may, upon resentencing, consider that the PSR calculation is based on the now advisory Sentencing Guidelines.

10

For the foregoing reasons, we will vacate and remand for resentencing by another district court judge.