

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-14-2006

# USA v. O'Keefe

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4737

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. O'Keefe" (2006). *2006 Decisions.* Paper 97.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/97

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-4737
_____

UNITED STATES OF AMERICA

vs.

SEAN PATRICK O'KEEFE,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 03-cr-00278-1)
District Judge:  The Honorable David S. Cercone
_____

Submitted Under Third Circuit LAR 34.1(a)
October 27, 2006


BEFORE: SMITH, WEIS, and NYGAARD, Circuit Judges.



(Filed: December 14, 2006)




_____

_____

NYGAARD, <u>Circuit</u> <u>Judge</u>.

I.

On December 1, 2003, Sean O'Keefe pleaded guilty to violating 18 U.S.C. §§371 and 1343 as a collections agent for a fraudulent telemarketing scheme run from Canada. The District Court sentenced O'Keefe to five months in prison, five months of home detention, and 3 years of supervised release. The District Court also ordered him to pay $90,000 in restitution, a $3,000 fine and a $100 assessment. O'Keefe appealed his sentence. Following *Booker*, this Court vacated and remanded O'Keefe's cause. The District Court held a second sentencing hearing and imposed the same sentence. O'Keefe timely appealed. We will affirm.

II.

A.

First, O'Keefe argues that, during his second sentencing hearing, the Government breached his plea agreement by arguing he should be held accountable for the full harm done by the telemarketing scheme, despite the parties' stipulation that he only knowingly took part in defrauding an individual named Doris Gilbert of $90,000.

We review the question of whether the Government breached a plea agreement *de novo*. *United States v. Rivera*, 357 F.3d 290, 293-94 (3d Cir. 2004). We analyze plea agreements according to contract principles and attempt to discern whether the

Government's conduct was inconsistent with the defendant's reasonable understanding when entering his plea. *Rivera*, 357 F.3d at 294-95.

O'Keefe's plea agreement states, in relevant part:

> [O'Keefe] will acknowledge his responsibility for the full scheme to defraud by wire during the period November 2001 through January 2002, as described in the information, and stipulate (subject to the limitations of paragraph C 4, below) that such conduct may be considered by the Probation Office and by the District Court in imposing sentence (emphasis added).

Paragraph C-4 states:

> In this regard, the parties agree that the maximum amount of loss from the scheme to defraud for which Mr. O'Keefe has responsibility pursuant to Sentencing Guidelines §1.B1.1.3, Relevant Conduct, is a sum not more than $90,000, based on Mr. O'Keefe's lack of knowledge of the nature of the scheme prior to December 5, 2001. However, the parties' stipulation is not intended to limit any inquiry by the District Court, and has no bearing on any fact not expressly set forth in the stipulation.

Supplemental Appendix at 180, 184.

At the plea colloquy, O'Keefe's counsel sought to clarify the meaning of paragraph A-4, and explained to the District Court that it was nothing more than a venue waiver. The U.S. Attorney agreed, stating:

> That is basically correct, your Honor. It is unquestionably the intent of this agreement that the Defendant's relevant conduct for purposes

3

of the Guidelines is based on the 90 thousand dollar figure, and that is provided both in Paragraph C-4, and then the factual basis for that is explained in the stipulation. And it is correct that the issue of venue is underneath the terms of Paragraph A-4.

Supplemental Appendix at 117-118.

O'Keefe contends paragraph C-4 prohibited the Government from advocating a sentence based upon harm caused to senior citizens before he knew the scheme was fraudulent. We disagree. Paragraph C-4 plainly refers to the maximum loss for which O'Keefe's offense level would be calculated pursuant to Sentencing Guidelines §2B1.1(b). Under that provision, the $90,000 loss for which O'Keefe would be responsible results in an eight-level increase in his offense level. U.S. SENTENCING GUIDELINES MANUAL §2B1.1(b)(E) (2006). This reading of paragraph C-4 is consistent with the rest of the plea agreement and the parties' statements before the District Court. For instance, under paragraph B-3, the Government expressly reserved the right to allocution on "the full extent and nature of" O'Keefe's involvement in the fraud. Although the Government conceded O'Keefe did not knowingly defraud senior citizens, no provision of the plea agreement prevented the Government from explaining the overall impact of his actions and his failure to alert authorities when he did become aware of the nature of the scheme. We cannot reasonably infer such a specific prohibition from paragraph C-4.

B.

4

District judges must follow a three-step analysis in sentencing criminal defendants. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). The district court must 1) continue to calculate a defendant's Guidelines sentence precisely as it would have before *United States v. Booker*; 2) formally rule on the parties' motions, stating on the record whether it is granting a departure and how that departure affects the Guidelines calculation; and 3) exercise its discretion by considering the relevant §3553(a) factors. *Gunter*, 462 F.3d at 247. At step three, the sentencing record should demonstrate the court considered the §3553(a) factors and any sentencing grounds properly raised by the parties which have recognized legal merit and factual support in the record. *Id.*

First, O'Keefe contends he was entitled to a four-level decrease in his offense level as a "minimal participant" in the fraud. U.S. Sentencing Guidelines §3B1.2 provides for a four-level decrease in the offense level of a "minimal participant" in any criminal activity and a two-level decrease in the offense level of a "minor participant." A "minimal participant" is one who plays a minimal role in concerted activity and is "plainly among the least culpable of those involved." U.S. SENTENCING GUIDELINES MANUAL §3B1.2 cmt. n.4 (2006). This adjustment is to be applied infrequently. *Id.* A "minor participant" is one who is less culpable than most other participants, but whose role cannot be described as minimal. U.S. SENTENCING GUIDELINES MANUAL §3B1.2 cmt. n.5 (2006). The District Court concluded he was a "minor participant" entitled only to a two-level decrease.

In applying §3B1.2, the district court must weigh the totality of the particular

5

circumstances in a defendant's case, and is not required to grant an adjustment based solely upon the defendant's assertions. U.S. SENTENCING GUIDELINES MANUAL §3B1.2 cmt. n.3(C) (2006). The district court's inquiry involves weighing factors such the defendant's relationship to other participants, his knowledge of others' activities, the importance of his actions to the success of the venture, his economic interest in the scheme and his physical participation. District courts exercise broad discretion in applying §3B1.2 and their rulings are left largely undisturbed on appeal. *United States v. Haut*, 107 F.3d 213, 217 (3d Cir. 1997); *United States v. Isaza-Zapata*, 148 F.3d 236, 238-39 (3d Cir. 1998).

Following the first sentencing hearing, the District Court noted O'Keefe discovered the scheme was fraudulent and nonetheless failed to notify authorities and collected $90,000 from Doris Gilbert. In addition, O'Keefe enjoyed an economic interest in the scheme by retaining between five and ten percent of his collections for himself. The District Court did not err by concluding O'Keefe was a minor, not minimal, participant in the fraud.

Next, O'Keefe argues the District Court violated the *Ex Post Facto* clause when it applied the 2003 Sentencing Guidelines Manual to reduce his offense level for his role in the offense before it reduced his offense level for acceptance of responsibility. Because O'Keefe did not present this argument to the District Court, we review it for plain error. *United States v. Dyer*, 325 F.3d 464, 467 (3d Cir. 2003).

When O'Keefe committed his offense in 2001, the Sentencing Guidelines Manual

Application Instructions simply listed the steps to be taken in calculating a sentence sequentially, (a) through (i). U.S. SENTENCING GUIDELINES MANUAL §1B1.1 (2001). In 2003, the Sentencing Commission added text specifically directing district courts to make adjustments sequentially, such that a district court adjusts an offense level for role in the offense before it adjusts for the defendant's acceptance of responsibility. *See* U.S. SENTENCING GUIDELINES MANUAL §1B1.1 (2003).

The District Court properly calculated the adjustments applicable to O'Keefe's offense. Generally, a district court should apply the Guidelines in effect at the time of sentencing, unless doing so would expose the defendant to greater punishment than if he were punished under the Guidelines in effect at the time he committed his crime. The 2003 amendment merely clarified the formulaic application of the Guidelines we directed district courts to employ in previous cases. It did not alter "the definition of criminal conduct or increase the penalty by which a crime is punishable." *California Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n.3 (1995).

O'Keefe also challenges the District Court's application of §2B1.1(b)(9)(B), which requires a two-level enhancement where "a substantial part of a fraudulent scheme was committed from outside the United States." U.S. SENTENCING GUIDELINES MANUAL §2B1.1(b)(9)(B) (2006). O'Keefe argues the enhancement is inapplicable to his offense because he was a resident of Canada at the time of his offense and did not know he was involved in extracting money from persons in the United States. O'Keefe's position lacks merit. First, O'Keefe's Canadian residence does not except him from the §2B1.1(b)(9)(B)

7

enhancement's coverage. Second, O'Keefe stipulated he "understood that Gerlach and others acting with him expected to receive money sent by wire transfer from Americans" and stated at his sentencing hearing that he "knew the money was coming from the United States." The District Court did not err when it applied the §2B1.1(b)(9)(B) enhancement.

## C.

Next, O'Keefe argues the District Court failed to make findings regarding his sentence objections as required by Federal Rule of Criminal Procedure 32(i)(3)(B).

The District Court made the requisite Rule 32 findings during the first sentencing proceedings, and reaffirmed those findings at the second sentencing hearing. At the second hearing, the District Court stated, "[N]othing in my view has fundamentally changed." The District Court was under no obligation to reconsider and re-issue its initial findings following our *Booker* remand.

## D.

Finally, O'Keefe contends the District Court misapplied *Booker* when it accorded the Sentencing Guidelines "great weight" and imposed an unreasonable sentence.

The Guidelines continue to carry considerable weight in the sentencing process. *See United States v. Gunter*, 462 F.3d 237 (3d Cir. 2006). Here, the District Court properly recognized the "highly advisory" quality of the Guidelines, and gave meaningful consideration to the relevant statutory factors and O'Keefe's particular circumstances. *United States v. Cooper*, 437 F.3d 324, 332 (3d Cir. 2006). The Guidelines range applicable to O'Keefe was 10-16 months. O'Keefe's sentence – five months in prison and

five months of home detention – was entirely reasonable.

III.

We conclude the Government did not breach O'Keefe's plea agreement and that the District Court imposed a proper and reasonable sentence. We will affirm.