**UNITED STATES of America**

v.

**Raymond SHELTON, Appellant.**

No. 09–1198.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Nov. 16, 2009.

Opinion filed Feb. 8, 2010.

James R. Pavlock, Esq., Office of United States Attorney, Philadelphia, PA, for Appellee.

Raymond Bernard Shelton, Tucson, AZ, pro se.

Before: AMBRO, ALDISERT, and ROTH, Circuit Judges.

OPINION

AMBRO, Circuit Judge.

The sentencing of Raymond Shelton is before us on appeal for a third time. We have twice vacated and remanded for re-sentencing after the Government twice breached the plea agreement. Shelton now appeals the sentence imposed by the District Court on the second remand. We affirm.[1]

---

1. The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## I.

In 2002, Shelton pled guilty to five firearms charges and conspiracy to distribute ecstacy. He was sentenced to 188 months' imprisonment. However, at the sentencing hearing, the Government breached its plea agreement with Shelton by asking for a base offense level higher than the level stipulated in the agreement. Therefore, on appeal we vacated and remanded for resentencing before another District Judge. *United States v. Shelton*, 91 Fed. Appx. 247, 248 (3d Cir.2004) (not precedential) ("*Shelton I* "). On remand, Shelton was sentenced to 168 months' imprisonment. On appeal from that sentencing, we also vacated and remanded the case for resentencing before another District Judge, holding that the Government again violated the plea agreement by asking for a sentence "within the sentencing guideline range," which was higher than the range contemplated by the plea agreement. *United States v. Shelton*, 179 Fed.Appx. 809, 812 (3d Cir.2006) (not precedential) ("*Shelton II* ").

On the second remand, prior to sentencing, the Government filed a written sentencing memorandum that it withdrew at the beginning of the sentencing hearing after the District Court warned the Government that its position was in violation of *Shelton II*.[2] After the Court stated that it would completely disregard the stricken memorandum, it asked if Shelton wanted another Judge to continue the sentencing. Shelton declined. He raised several objections to the Presentence Report ("PSR"), and the Court continued the sentencing until a later date to consider the objections.

When the hearing resumed some months later, the Court agreed with the PSR that the base offense level for the firearms charges was 26 because the offense involved "a firearm described in 26 U.S.C. § 5845(a) or 18 U.S.C. § 921(a)(30)," and Shelton had two qualifying convictions for crimes of violence. *See* U.S. Sentencing Guidelines Manual § 2K2.1(a)(1) (2000).[3] Shelton received a two-level enhancement for possessing a firearm with an obliterated serial number, *see* U.S.S.G. § 2K2.1(b)(4), and a two-level enhancement for the number of firearms, *see* U.S.S.G. § 2K2.1(b)(1)(B), as contemplated by the plea agreement. Because U.S.S.G. § 2K2.1(b) states that "the cumulative offense level determined [up to this point] shall not exceed level 29," it was decreased from 30 to 29. Shelton was then subject to a four-level specific offense characteristic enhancement under U.S.S.G. § 2K2.1(b)(5), followed by a three-level downward adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, bringing his total offense level to 30. Shelton would have been in Criminal History Category V but for his status as a career offender, which placed him in Category VI. Shelton's Guideline range was 168 to 210 months' imprisonment. The Government requested a sentence of 77 to 96 months.

After reiterating that it did not consider the Government's stricken sentencing memorandum in imposing sentence, the Court sentenced Shelton to 168 months' imprisonment. It imposed a fine of $750

---

**2.** While the Government failed to include this sentencing memorandum in its Supplemental Appendix, the District Court described it as requesting a sentence between 151 and 188 months.

**3.** Shelton contends that the 2001 Sentencing Guidelines Manual was used instead of the 2000 Manual, creating *ex post facto* issues. However, the United States Probation Office did use the 2000 Manual. *See* PSR ¶ 32 ("The 2000 edition of the *Guidelines Manual* has been used in this case."); Supp'l App. 77 (District Court Mem.) ("Probation applied the 2000 version of the Guidelines to Defendant.").

and a special assessment of $600. The Court later filed a written memorandum setting out in more detail the bases for its sentencing determination. Shelton timely appealed.

## II.

### A.

■ Shelton argues that the Government's written memorandum filed prior to his sentencing breached the plea agreement, and because the District Court read the memorandum, either the sentencing should have been conducted by a different Judge or the Court should have allowed Shelton to withdraw his plea.

However, after the Government withdrew the memorandum and the District Court struck it from the record, Shelton declined the Court's offer to have the sentencing proceed before another District Judge.[4] Therefore, Shelton voluntarily waived his right to a remedy for any breach of the plea agreement by the Government involving the stricken memorandum.

■ Shelton also argues that the Government breached the plea agreement by not moving for a downward departure under U.S.S.G. § 5K1.1 for substantial assistance to the Government. Because the Government retained in the plea agreement "sole discretion" whether to make a § 5K1.1 motion, see Supp'l App. 142, it could breach the agreement only by declining to make the motion in bad faith. See United States v. Isaac, 141 F.3d 477, 483–84 (3d Cir.1998).

The only evidence presented by Shelton regarding his cooperation consisted of the testimony of his former attorney, Christopher Warren, at the first sentencing hearing. Warren discussed the history of Shelton's cooperation and repeatedly stated that he did not believe the Government had acted in bad faith. Shelton presented no other relevant evidence or argument on the issue. Therefore, Shelton failed to meet his burden of demonstrating that the Government breached the plea agreement. See United States v. Swint, 223 F.3d 249, 254 (3d Cir.2000).

### B.

■ Shelton next argues that his simple assault conviction did not constitute a "crime of violence" under the Guidelines. The criminal information filed against Shelton charged that he "unlawfully attempt[ed] to cause or intentionally, knowingly or recklessly cause[d] bodily injury to another, or attempt[ed] by physical menace to put another in fear of imminent serious bodily injury," in violation of the Pennsylvania simple assault statute ("PSAS"), 18 Pa. Cons.Stat. § 2701. We recently held that an intentional or knowing violation of subsection (a)(1) of the PSAS qualifies as a crime of violence under U.S.S.G. § 4B1.2(a)(2). United States v. Johnson, 587 F.3d 203, 212 (3d Cir. 2009).

To determine the specific part of § 2701 to which Shelton pled guilty, we may consider only "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or ... some comparable judicial record of

---

4. THE COURT: I will state for the record that the government's request for a hundred and fifty-one to a hundred and eighty-eight month sentence in my view is illegal. I will completely disregard it, and it will form no part in my decision as to what sentence will be imposed in this case. Mr. Ingram [Shelton's counsel], does that satisfy you and your client as to whether or not I can continue to preside in this sentencing?

MR. INGRAM: Yes, Judge, it does.
Supp'l App. 14–15.

this information." *Shepard v. United States*, 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005); *see also Johnson*, 587 F.3d at 209. Here, the state of mind to which Shelton pled guilty can be determined from the plea colloquy at Shelton's guilty plea on the simple assault charge:

Q: Do you understand the element[s] of the offense of simple assault?

A: Yes, I do.

Q: Well, I'm going to tell you what they are. The Commonwealth would have to prove in order to prevail in this case that you attempted to cause or that you intentionally or knowingly caused bodily injury to another person. Do you understand that?

A: Yes.

Supp'l App. 174. This colloquy makes clear that Shelton pled guilty to an intentional or knowing violation of subsection (a)(1).[5] Therefore, the District Court properly determined that the conviction qualified as a crime of violence in this case.[6]

### C.

██ Shelton objects to the four-level enhancement imposed by the Court under U.S.S.G. § 2K2.1(b)(5),[7] which applies when a defendant "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense."

"In connection with" covers a wide range of relationships and is construed expansively. *United States v. Loney*, 219 F.3d 281, 284 (3d Cir.2000) (simultaneous possession of a pistol and heroin satisfied U.S.S.G. § 2K2.1(b)(5)). The application of this enhancement was appropriate, as Shelton admitted at his guilty plea colloquy that he sold an informant a rifle, ammunition, and magazines, and at the same time gave the informant ecstacy tablets. Supp'l App. 99–101; *see also* PSR ¶ 16. These actions constituted use or possession of a firearm and ammunition "in connection with" distribution of ecstacy, another felony offense.

### D.

██ Shelton also argues that the District Court failed to treat the Guidelines as advisory. However, the Court on several occasions expressly noted the advisory nature of the Guidelines, and nothing in the record indicates otherwise.

He contends as well that the District Court erred by failing to weigh properly the factors set forth in 18 U.S.C. § 3553(a). We disagree. We review criminal sentences for reasonableness, and courts' consideration of the relevant § 3553(a) factors must be rational and meaningful. *United States v. Grier*, 475 F.3d 556, 571 (3d Cir.2007) (*en banc*). Here, the Court's oral findings at sentencing and its written memorandum opinion show that it gave meaningful consideration

---

5. The "attempted to cause" portion of the court's question does not change this analysis, as an attempt constitutes intentional conduct. "[B]y its very nature acting recklessly is inconsistent with the *mens rea* required for attempt. A person cannot intend to commit a criminally reckless act. He or she either acts recklessly or does not." *Knapik v. Ashcroft*, 384 F.3d 84, 91 (3d Cir.2004).

6. We reject Shelton's argument that the prior conviction must be specifically designated as

a "felony" under state law to be considered a "felony" for purposes of the career offender provision. *See* U.S.S.G. § 4B1.2 cmt. n. 3. We also reject as frivolous his argument that treating this conviction as a "crime of violence" violates the Full Faith and Credit Clause of the U.S. Constitution.

7. U.S.S.G. § 2K2.1(b)(5) was renumbered in November 2006 as U.S.S.G. § 2K2.1(b)(6).

to the § 3553(a) factors. It addressed, among other things, the "extremely grave" nature of the offenses, Shelton's significant criminal history, limited history of legitimate employment, and substance abuse problems, and the "extraordinary" support shown by Shelton's family at the sentencing hearings.

Finally, Shelton asserts that the District Court impermissibly delegated to the Bureau of Prisons its duty to set the manner and schedule of Shelton's payments of his fine and special assessment. The Court ordered the fine was due immediately, recommended that Shelton participate in the Bureau of Prisons' Inmate Financial Responsibility Program, and ordered that, should the fine remain outstanding upon his release from confinement, it would become a condition of supervised release to be paid at the rate of at least $25 per month beginning 30 days after his release. Shelton's objection to the Court's order is meritless, as it is based on 18 U.S.C. § 3664(f), a statute that does not apply to fines and special assessments.

\* \* \* \* \* \*

We have considered Shelton's other arguments and conclude that no further discussion is necessary. We affirm Shelton's sentence.[8]

---

8. In a supplemental brief, Shelton appears to argue that the Government improperly pursued an indictment charging a firearms violation under 18 U.S.C. § 922(g)(1), after it had moved to dismiss firearms counts from a complaint filed prior to Shelton's indictment. This argument was not presented to the District Court or in Shelton's opening brief. Moreover, there is no basis in the record for this assertion, as Shelton pled guilty freely and voluntarily to a charge brought under § 922(g)(1), the plea agreement states that the parties' agreement contains no additional promises or understandings other than those set forth in the written agreement, and Shelton agreed during his plea colloquy that no promises had been made other than the promises stated on the record.