

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-16-2001

# United States v. Titchell

Precedential or Non-Precedential:

Docket 00-3193

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

## Recommended Citation

"United States v. Titchell" (2001). *2001 Decisions.* Paper 183.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/183

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 16, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3193

UNITED STATES OF AMERICA

v.

LAWRENCE TITCHELL,
        Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 98-cr-00111-3 )
District Judge: Honorable Gary L. Lancaster

Argued April 23, 2001

Before: RENDELL, AMBRO, and BRIGHT*,
Circuit Judges

(Filed: August 16, 2001)

        Richard L. Rosenbaum, Esq.
         [ARGUED]
        Law Offices of Richard L.
         Rosenbaum
        Penthouse - One East Broward
         Building
        Ft. Lauderdale, FL 33301

         Counsel for Appellant

_____
* Hon. Myron Bright, Senior Judge of the United States Court of Appeals
for the Eighth Circuit, sitting by designation (via videoconference).

          Bonnie R. Schlueter, Esq.
          Barbara M. Carlin, Esq.
           [ARGUED]
          Office of United States Attorney
          633 United States Post Office
           and Courthouse
          Pittsburgh, PA 15219

           Counsel for Appellee

OPINION OF THE COURT

RENDELL, Circuit Judge:

Lawrence A. Titchell appeals his conviction and sentence
for two counts of mail fraud, in violation of 18 U.S.C.
S 1341, and one count of conspiracy to commit mail fraud,
in violation of 18 U.S.C. S 371. Titchell argues, inter alia,
that the District Court erred when calculating the "loss"
attributable to Titchell's conduct under U.S.S.G.S 2F1.1.
We agree, and will vacate Titchell's sentence and remand
for resentencing.[1]

I.

Titchell and his co-defendants, David Wells and Lloyd
Prudenza, were accused of participating in a scheme to
fraudulently procure funds from thousands of businesses
by mailing out fictitious invoices for renewal of telephone
"Yellow Pages" advertising. Wells and Prudenza were
fugitives at the time of Titchell's trial, and therefore Titchell
was tried alone. A jury found Titchell guilty, and his co-
defendants later pled guilty. The District Court sentenced
Titchell to a thirty-seven month term of imprisonment and
a three-year term of supervised release.

_____

1. The District Court had jurisdiction over this case pursuant to 18
U.S.C. S 3231, and we have jurisdiction over this appeal pursuant to
28 U.S.C. S 1291.

II.

Titchell raises five issues on appeal: he maintains that (1) his indictment was void because it was not signed by the grand jury foreperson; (2) the District Court gave an erroneous "willful blindness" jury instruction; (3) his trial counsel was constitutionally ineffective due to counsel's alleged failure to object to the admission of certain testimony at trial; (4) his conviction and sentence violated the principles announced in Apprendi v. New Jersey, 430 U.S. 466 (2000); and (5) the District Court erred when calculating the "loss" attributable to Titchell's conduct under U.S.S.G. S 2F1.1.

Titchell's first four arguments can be easily dismissed. First, because he did not object at trial, we review for plain error Titchell's contention that his indictment is void because it was not signed by the foreperson of the grand jury. Under the plain error standard, we will grant relief only if: (1) an error was committed; (2) the error is plain, meaning that it is clear or obvious; (3) the error affects Titchell's substantial rights, which normally requires a showing of prejudice; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. E.g., United States v. Nappi, 243 F.3d 758, 762 (3d Cir. 2001).

While the lack of signature on the indictment does amount to error, the Supreme Court has explained that "the foreman's duty to sign the indictment is a formality, for the absence of the foreman's signature is a mere technical irregularity that is not necessarily fatal to the indictment." Hobby v. United States, 468 U.S. 339, 345 (1984). Indeed, Titchell does not even attempt to meet his burden of demonstrating prejudice from the error, and thus the error cannot be grounds for relief.

Second, Titchell claims that the District Court gave an erroneous willful blindness instruction. The government argues that here, too, the standard of review should be plain error, because Titchell did not properly object at trial. However, Titchell did object at trial to the instruction, arguing that it impermissibly lowered the government's burden of proof. Supp. App., Vol. II, at 456–58. While

3

Titchell's arguments on appeal do not perfectly track his objection at trial, we think they are sufficiently similar that the issue is preserved for our review.

That being said, we find no error in the District Court's instruction. The court gave the jury a fairly standard willful blindness instruction, which stated that the government could meet its burden of proving Titchell's knowledge of the falsity of his statements if the government establishes "beyond a reasonable doubt that [Titchell] acted with deliberate disregard" of the truth or with the"conscious purpose of avoiding learning the truth." Id. , Vol. III, at 528. The court also properly limited this instruction by telling the jury that the element of knowledge would not be satisfied if Titchell "actually believed the statement[s] to be true," and that guilty knowledge "cannot be established by demonstrating that [Titchell] was merely negligent or foolish or acting out of inadvertence or accident." Id. at 528–29.

The only alleged shortcoming that Titchell identifies in the instruction is that it omitted the requirement that "the defendant himself was subjectively aware of the high probability of the fact in question." Appellant's Br. at 26. Titchell describes this as "the high probability requirement." Id. Yet our cases make clear that no such requirement exists. As we explained in United States v. Stewart, 185 F.3d 112 (3d Cir. 1999), "we do not require a court's [willful blindness] charge to contain specific language that a defendant must have `a subjective awareness of a high probability that something is amiss.' " Id. at 126 (quoting United States v. Stuart , 22 F.3d 76, 81 (3d Cir. 1994)). As a result, Titchell's argument is meritless.

Next, Titchell raises a curious argument regarding his trial counsel's alleged ineffectiveness. Titchell's former attorney, Mr. Michael Feldman, had testified as a fact witness for Titchell in an earlier workers' compensation hearing in Ohio. At trial, the prosecution called Feldman as a witness to testify regarding statements Titchell had made to him, about which Feldman had testified at the workers' compensation hearing. Titchell's counsel objected, but the District Court allowed Feldman to testify, reasoning that Titchell had waived his attorney-client privilege by calling

4

Mr. Feldman as a fact witness in the earlier workers'
compensation hearing. Supp. App., Vol. II, at 340.

Rather than arguing that the District Court erred,
Titchell on appeal claims that his attorney's failure to object
to Feldman's testimony constitutes ineffective assistance of
counsel. Appellant's Br. at 41-46. However, we reject
Titchell's claim for three reasons.

First, Titchell himself acknowledges that such a claim
should not be raised on direct appeal, but rather by way of
a habeas corpus petition. Id. at 42, 46; see, e.g., United
States v. Mustafa, 238 F.3d 485, 497 (3d Cir. 2001). For
that reason alone, we need not entertain Titchell's
ineffectiveness claim. Second, Titchell's claim makes no
sense because his trial counsel did object to Feldman's
testimony. Supp. App., Vol. I, at 1a; id., Vol. II, at 338-40.
Lastly, even had Titchell's trial counsel failed to object to
Feldman's testimony, Titchell would have suffered no
prejudice. This is because the District Court was correct to
admit Feldman's testimony, given that calling one's
attorney as a fact witness in a prior proceeding constitutes
a waiver of the attorney-client privilege, at least regarding
the subject of the testimony adduced in the prior
proceeding. E.g., Brown v. Trigg, 791 F.2d 598, 601 (7th
Cir. 1986) (ruling that defendant waived her attorney-client
privilege when she called an agent of her attorney to testify
at a prior juvenile court hearing).

Titchell's Apprendi-based argument is also without merit.
Because he did not object during the district court
proceedings, we review for plain error Titchell's claim that
his conviction and sentence violate the principles
announced in Apprendi. It is well-settled, in both this
Circuit and others, that Apprendi is not implicated unless
the defendant's actual sentence exceeds the statutory
maximum sentence for the crime of conviction. E.g., United
States v. Williams, 235 F.3d 858, 863 (3d Cir. 2000).
Titchell received a sentence of 37 months, while the
statutory maximum for mail fraud is five years. 18 U.S.C.
S 1341. Accordingly, there is simply no Apprendi error in
this case, plain or otherwise.

Finally, we will address Titchell's last argument, namely

that the District Court erred when calculating the "loss" attributable to Titchell's conduct under U.S.S.G.S 2F1.1. As part of his mail fraud scheme, Titchell mailed out 119,575 fraudulent invoices for Yellow Pages advertising at $147 each, for an invoice total of $17,577,525. Apparently, it is impossible to ascertain precisely how many of these invoices were sent back to Titchell with payment, but when the government became involved, it intercepted Titchell's mail and seized approximately $647,000 worth of checks that were intended to pay for the fraudulent advertisement. Supp. App., Vol. III, at 661, 666, 673-74.2 If this $647,000 constitutes all the money that was sent to Titchell, it would represent approximately a 3% return on his mailing, which is what Titchell maintains is the norm for this sort of scam and what he expected and intended to receive. Appellant's Br. at 38; Supp. App., Vol. III, at 663. The government has identified only one victim of Titchell's fraud who actually lost his $147. Presentence Report, P 28. As part of his sentence, Titchell was ordered to pay $147 restitution to this victim. Supp. App., Vol. III, at 684. Therefore, the record demonstrates a potential loss from Titchell's scam of $17,577,525; Titchell argues that his intended loss was only $647,000 (or something closely approximating that amount, because he only expected a 3% return on his mailing);3 and the actual loss that the government has identified is a mere $147.

Titchell was sentenced pursuant to S 2F1.1 of the Sentencing Guidelines, which establishes a base offense level of 6, and then increases the offense level depending on

_____

2. It is unclear from the record what has since happened to these checks -- presumably they remain in the government's possession, or perhaps they were returned to their rightful owners -- but certainly they were never cashed.

3. Confusingly, Titchell's trial counsel at the sentencing hearing repeatedly referred to this $647,000 as the "actual" loss, rather than the intended loss. But this cannot be the "actual" loss, because this money was intercepted by the government before Titchell could cash the checks. Titchell's attorney's mischaracterization is perhaps understandable, though, because he was simply trying to impress upon the court that the "loss" for Sentencing Guidelines purposes should be far less than the potential loss of $17,577,525.

the "loss" involved. Application Note 8 states that "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." The District Court's analysis of intended loss consisted of the following paragraph:

> In this case the bulk mailing did (sic) defendant was found guilty of contained 119,575 bogus renewal invoices at a quote of $147 a piece. Thus, intended loss was $17,577,525. Therefore, the increase is warranted and the base offense level is increased to 21.

Id. at 675. The District Court then sentenced Titchell to thirty seven months of imprisonment, which is the bottom of the Sentencing Guidelines range of thirty seven to forty six months for an offense level of 21 and a criminal history category of I.

Titchell objected to the District Court's manner of calculating intended loss, and thus the issue is properly preserved for appeal. Our review of the District Court's interpretation and application of the Sentencing Guidelines is plenary, but we must accept the District Court's factual conclusions unless they are clearly erroneous. E.g., United States v. Geevers, 226 F.3d 186, 189 (3d Cir. 2000).

The resolution of this issue is controlled by Geevers, in which we exhaustively analyzed the concept of intended loss under S 2F1.1.4 According to Geevers, "[i]t is clear that a district court errs when it simply equates potential loss with intended loss without deeper analysis." Id. at 192. This is because "[t]he fraud guideline . . . has never endorsed sentencing based on the worst-case scenario potential loss," and "equating possible loss with . . . intended loss" is a "linguistic stretch" that we have previously rejected. Id. (emphasis in original). Moreover, "[i]ntended loss refers to

_____

4. Geevers was decided on August 18, 2000, which is several months after Titchell's sentencing on February 4, 2000. Yet there are no retroactivity concerns with applying Geevers to Titchell's sentencing on direct appeal, because Geevers interpreted the same version of S 2F1.1 as was in force at the time of Titchell's sentencing. The parties agreed at oral argument that Geevers is controlling; surprisingly, however, neither party cited Geevers in their briefs, even though they were filed several weeks after Geevers had been decided.

the defendant's subjective expectation, not to the risk of loss to which he may have exposed his victims." Id. Therefore, it is the government's burden "to prove intended, not possible, loss if it seeks to increase guideline levels faced by the defendant under S 2F1.1." Id.

Despite this warning that district courts should not assume that intended and potential loss are the same, the Geevers court went on to explain that it is permissible for a district court to draw a reasonable inference that the defendant intended to cause the full potential loss. Id. at 192-93. Indeed, such was the case in Geevers, in which we affirmed the district court's determination that the defendant in a check kiting scheme intended to cause the full loss of the face amount of his false checks. Id. In other words, the rule established by Geevers is that intended and potential loss may be the same (and a district court can draw an inference to that effect), but it is error for a district court simply to equate the two without "deeper analysis."

It is evident from the transcript of the sentencing hearing that the District Court erred by equating potential loss with intended loss without the requisite "deeper analysis." As noted above, in determining intended loss, the District Court merely referenced the potential loss calculation, and did not attempt to explain or justify why the potential loss in this case should be considered the same as the intended loss. The government appears to argue that the District Court implicitly drew the reasonable inference that Titchell intended to cause the full potential loss from his mail fraud. This argument, however, does not satisfy Geevers: if district courts could silently draw such inferences, there would be little left of Geevers' admonition that district courts must perform a "deeper analysis" than simply calculating potential loss.

In any event, the government's argument misses the mark because the sentencing hearing transcript confirms that the District Court did not implicitly draw the reasonable inference that Titchell intended to cause the full potential loss; rather, the District Court misapprehended the Sentencing Guidelines by assuming that intended loss and potential loss are essentially the same underS 2F1.1. Toward the end of the hearing, when summing up its

8

reasons for imposing the sentence that it did, the District Court remarked that: "I've also taken into account the fact that technically the potential loss is the one that's used for guideline calculations." Supp. App., Vol. III, at 686.

Contrary to the District Court's understanding, potential loss is not the measure that is "technically" used for guideline calculations; instead, intended loss is the proper measure, and the court erred by equating the two without further analysis. It is also interesting to note that at sentencing, the District Court observed that calculating potential loss in this case "overstate[s] the seriousness of the offense." Id. This statement seems to reflect the court's view that its loss calculation under S 2F1.1 overstated Titchell's actual intent, lending further support to the conclusion that when calculating loss, the District Court concerned itself with only potential loss and not intended loss.5

Lastly, assuming that the District Court committed error, we must ask if the government has met its burden of demonstrating that the error is harmless beyond a reasonable doubt. See Fed. R. Crim. P. 52(a). The government has not even attempted to argue harmlessness here, but even if it did, it would have difficulty meeting its burden. The possibility clearly exists that the District Court would impose a lesser sentence on remand. It is reasonable to believe that once the District Court applies the proper legal standards under S 2F1.1, intended loss will amount to substantially less than $17,577,525, calling for a reduced offense level and guidelines range. And if the guidelines range were lowered, we certainly cannot assume that Titchell's sentence would be unaffected. Thus, Titchell is entitled to resentencing.

_____

5. We have previously noted that "Application Note 11 of S 2F1.1 specifically provides an escape valve for situations in which the intended loss may `overstate the seriousness of the offense.' " Geevers, 226 F.3d at
195 (quoting Application Note 11). In such cases, Application Note 11 provides that "a downward departure may be warranted." Despite its apparent belief that the potential loss overstated the seriousness of Titchell's offense, the District Court nonetheless chose "not [to] depart below the guidelines." Supp. App., Vol. III, at 686.

Accordingly, the Judgment and Conviction Order of the District Court entered on February 14, 2000, will be vacated and the case remanded for resentencing in conformity with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

10