**UNITED STATES of America**

v.

**Alonzo THORNTON Appellant**

**No. 02–1324.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Aug. 2, 2002.

Opinion Filed Oct. 3, 2002.

Matthew R. Gover, Harrisburg, PA, Counsel for Appellant.

Martin C. Carlson, United States Attorney, William A. Behe, Assistant United States Attorney, Harrisburg, PA, Counsel for Appellee.

Before: ROTH, RENDELL and AMBRO, Circuit Judges.

## OPINION OF THE COURT

AMBRO, Circuit Judge.

Appellant Alonzo Thornton pled guilty to one count of conspiracy to distribute and possess with intent to deliver fifty grams or more of crack cocaine contrary to 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. § 846, and the District Court imposed, *inter alia*, a 180–month term of imprisonment. Thornton now appeals, contending that the District Court erred by applying offense level enhancements pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 2D1.1(b)(1) and 3B1.4. We exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291. Finding Thornton's arguments unpersuasive, we affirm.

### I.

U.S.S.G. § 2D1.1(b)(1) dictates a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed" during the defendant's offense. This enhancement applies if the Government shows, by a preponderance of the evidence, that "the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n. 3. *See United States v. Price*, 13 F.3d 711, 733 (3d Cir.1994) (stating, in *dicta*, that the Government has the burden of showing that it is not "clearly improbable" that the weapon was connected to the offense); *United States v. Khang*, 904 F.2d 1219, 1223 n. 7 (8th Cir. 1990) (same). *But see United States v. Alexander*, 292 F.3d 1226, 1231 (10th Cir. 2002) (stating that once the Government presents its prima facie evidence supporting a § 2D1.1(b)(1) enhancement, the defendant must rebut by showing that it is "clearly improbable that the weapon was connected to the offense"); *United States v. Berkey*, 161 F.3d 1099, 1103 (7th Cir. 1998) (same); *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir.1996) (same); *United States v. Hall*, 46 F.3d 62, 63 (11th Cir.1995) (same); *United States v. Corcimiglia*, 967 F.2d 724, 727–28 (1st Cir.1992) (same); *United States v. Restrepo*, 884 F.2d 1294, 1296 (9th Cir.1989) (same).

■ Thornton raises two arguments against the imposition of this enhancement. First, he contends that the District Court violated his plea agreement by considering his post-cooperation statements in applying the enhancement. Second, Thornton argues that, absent his post-cooperation statements, there is insufficient evidence supporting the enhancement's application.

Approximately five months after his indictment, Thornton entered a plea agreement in which he "agree[d] to cooperate fully with the United States." In exchange, the Government "agree[d] that any statements made by the defendant during the cooperation phase of this agreement shall not be used against the defendant in any subsequent prosecutions or *in the determination of the sentence under the U.S. Sentencing Guidelines*." *Id.* (emphasis added).

In enhancing Thornton's sentence under § 2D1.1(b)(1), the District Court relied in part on the fact that "the defendant's own admissions at one time confirmed the fact that the guns were in the house." Thornton offered this information while cooperating with the Government, and therefore the District Court's consideration of it violated his plea agreement as well as U.S.S.G. § 1B1.8.

■ Thornton, however, did not object to the District Court's consideration of his statement. Therefore, we review the District Court's determination only for plain error. *United States v. Knight*, 266 F.3d 203, 206 (3d Cir.2001); *United States*

v. *Cashman*, 216 F.3d 582, 588 (7th Cir. 2000). Under a plain error standard of review, we reverse only if

> (1) error was committed, (2) the error was plain, *i.e.*, clear or obvious, and (3) the error affected the defendant's substantial rights. In addition, even where plain error exists, our discretionary authority to order correction is to be guided by whether the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Knight*, 266 F.3d at 206. With respect to the third prong, Thornton must show that the error was "prejudicial," *i.e.*, "that the outcome—in this context, the sentence—was affected, in the sense that it likely would have been different but for the error." *Id.* at 207. We find no plain error because Thornton fails to present any evidence regarding prejudicial effect.

■ Indeed, Thornton could not show prejudice arising from this error for the very reason we reject his second argument regarding insufficiency of evidence: the Government presented sufficient evidence, independent of Thornton's post-cooperation statements, in support of the enhancement. According to Thornton's presentence investigation report, Joe Anilus, one of Thornton's coconspirators, admitted that "when he, Mr. Thornton and others were dealing drugs in Carlisle, they were in possession of two handguns, a .38 caliber snub-nosed and a .38 caliber long-barrel." *See* Presentence Investigation Report ("PSR") at ¶ 14. The District Court could consider this information without violating Thornton's plea agreement. *See United States v. Baird*, 218 F.3d 221, 231 (3d Cir.2000).

Anilus' admission of gun possession constitutes sufficient evidence supporting Thornton's § 2D1.1(b)(1) enhancement.

Through it, the Government established that a coconspirator possessed weapons during the commission of the offense. Moreover, it is not "clearly improbable that the weapon[s] [were] connected with the offense" as "weapons have become 'tools of the trade' in illegal narcotics operations." *United States v. White*, 875 F.2d 427, 433 (4th Cir.1989) (citation omitted). Most importantly, Thornton is culpable for Anilus' possession since, due to Thornton's presence during the described drug transaction(s), his coconspirator's actions were "reasonably foreseeable." U.S.S.G. § 1B1.3(a)(1)(B).

## II.

U.S.S.G. § 3B1.4 (2001) dictates a two-level enhancement "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense." The District Court imposed this enhancement because a minor "sold crack cocaine for Mr. Thornton's organization." PSR at ¶ 36.

■ Thornton contends that § 3B1.4 should not apply because he had no knowledge that his criminal activity involved the use of a minor. This is an issue of first impression before this Court, and our review "of the District Court's interpretation and application of the Sentencing Guidelines is plenary." *United States v. Titchell*, 261 F.3d 348, 353 (3d Cir.2001). Two sister circuit courts have addressed this question, and both concluded that § 3B1.4 does not include a scienter requirement. *United States v. Gonzalez*, 262 F.3d 867, 870 (9th Cir.2001); *United States v. McClain*, 252 F.3d 1279, 1285 (11th Cir. 2001).[1] We agree.

"We follow the clear, unambiguous language of the Guidelines if there is no

---

1. In unpublished non-precedential opinions, four other courts of appeal have reached the same result. *United States v. Mott*, 26 Fed.

Appx. 8, 10, 2001 WL 1388910 (1st Cir.2001) ("There is no scienter element in this guide-

discernable manifestation of contrary intent." *United States v. Wong,* 3 F.3d 667, 670 (1993). Here, § 3B1.4's language clearly dictates that "[i]f the defendant used or attempted to use" a minor in the commission of the offense, the sentencing enhancement applies. The enhancement's unambiguous language does not contain a scienter requirement, and "[w]e refuse to find ambiguity where none exists to defeat the plain meaning of the Guidelines." *United States v. Mobley,* 956 F.2d 450, 453 (3d Cir.1992).

Moreover, this reading is consistent with Congress' intent as expressed by its deliberate omission of language creating a scienter requirement in § 3B1.4. *Id.* at 452–53 (applying the *expressio unius est exclusio alterius*[2] canon of construction in holding that U.S.S.G. § 2K2.1(b)(2) does not include a scienter requirement). When Congress wanted to include such a requirement in the Guidelines, it knew exactly how to do so. *See, e.g.,* U.S.S.G. § 2K1.3(b)(2) (applying enhancement when "the offense involved any explosive material that the defendant knew or had reason to believe was stolen"); U.S.S.G. § 3C1.1 (applying enhancement when "defendant wilfully obstructed or impeded, or attempted to impede, the administration of justice").

Thornton cites three Supreme Court decisions for the proposition that we should read a scienter requirement into § 3B1.4. *Staples v. United States,* 511 U.S. 600, 605,

114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (interpreting 26 U.S.C. § 5861(d)); *Liparota v. United States,* 471 U.S. 419, 426, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) (interpreting 7 U.S.C. § 2024(b)(1)); and *Morissette v. United States,* 342 U.S. 246, 250–51, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (interpreting 18 U.S.C. § 641). We remain unpersuaded. All three cases "dealt with the requisite intention for conviction of a crime, not for purposes of imposing an enhanced sentence under the Guidelines. They are clearly inapposite." *United States v. Brannan,* 74 F.3d 448, 453–54 (3d Cir.1996) (rejecting similar contention in holding that U.S.S.G. § 2K2.1(b)(5) does not contain a scienter requirement).

■ Finally, applying § 3B1.4 without such a requirement does not offend Thornton's due process rights. *Gonzalez,* 262 F.3d at 870 (rejecting argument that "the absence of a scienter requirement in section 3B1.4 would violate due process"); *see McMillan v. Pennsylvania,* 477 U.S. 79, 87–88, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (establishing the factors to consider in determining whether a sentencing enhancement violates due process); *Mobley,* 956 F.2d at 456–59 (applying *McMillan* factors to enhancement under Sentencing Guidelines). First, the enhancement did not alter the maximum sentence that Thornton could receive. *See* 21 U.S.C. § 841(b)(1)(A) (establishing maximum sentence of life imprisonment for violation of 21 U.S.C. § 841(a)(1)); 21 U.S.C. § 846 ("Any person who … conspires to commit

line [§ 3B1.4], and no Court has seen fit to read one in.") (unpublished opinion); *United States v. Cummings,* 18 Fed.Appx. 135, 137, 2001 WL 1032368 (4th Cir.2001) (rejecting § 3B1.4 scienter requirement) (unpublished opinion); *United States v. Li,* 205 F.3d 1326, 2000 WL 233702, at *3 (2d Cir.2000) (recognizing that "a plain reading of § 3B1.4 reveals no such knowledge requirement") (unpublished opinion); *United States v. Padron,* 221 F.3d 1345, 2000 WL 748095, at *1 (8th

Cir.2000) ("Nothing in the guideline itself, or the commentary thereto, even suggests, much less states, that actual knowledge of the age of the minor is necessary.") (unpublished opinion).

2. *"Expressio unius est exclusio alterius* is a Latin maxim that means 'to express one is to exclude the other.' " *Abdullah v. American Airlines, Inc.,* 181 F.3d 363, 372 (3d Cir. 1999).

any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense ....").  Second, the enhancement did not negate the presumption of innocence or relieve the Government's burden of proving the underlying offense.  Had Thornton not pled guilty, the Government would have had to prove each element of his offense beyond a reasonable doubt.  Third, § 3B1.4 did not create a separate offense requiring a separate penalty.  The enhancement did not "have such a dispropor-tionate impact on the sentence so that it is 'really' an element of the offense for which defendant is being punished."  *Mobley,* 956 F.2d at 456 (citing *McMillan,* 477 U.S. at 88, 106 S.Ct. 2411).

### III.

For the foregoing reasons, we affirm the District Court's sentencing enhancements.