**UNITED STATES of America**

v.

**Michael SWIFT, Appellant.**

**No. 09–1986.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Dec. 17, 2009.

Filed: Dec. 21, 2009.

George S. Leone, Esq., Office of United States Attorney, Newark, NJ, for United States of America.

Lori M. Koch, Esq., Office of Federal Public Defender, Camden, NJ, for Appellant.

Before: SLOVITER, JORDAN and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

JORDAN, Circuit Judge.

Michael Swift appeals the judgment of the United States District Court for the District of New Jersey sentencing him to a 130–month term of imprisonment following his conviction for bank robbery. At Swift's sentencing hearing, the government moved for a downward departure under § 5K1.1 of the United States Sentencing Guidelines, based upon Smith's co-operation with law enforcement authorities. Swift contends that the District Court improperly merged its ruling on that motion with its consideration of the sentencing factors enumerated in 18 U.S.C. § 3553(a), resulting in a procedurally and substantively unreasonable sentence. For the reasons that follow, we agree that Swift's sentence was procedurally unreasonable. We will therefore vacate the sentence imposed by the District Court and remand for resentencing.

## I. Factual Background

Between September 2007 and January 2008, Swift committed three bank robberies in southern New Jersey, yielding approximately $29,000 in proceeds. Following the third robbery, one of the target bank's employees identified Swift from a photo lineup, and a warrant was issued for his arrest. Law enforcement officers apprehended Swift on January 26, 2008. On January 31, 2008, after being advised of and waiving his constitutional rights, Swift confessed to all three robberies. He was committed to the custody of the United States Marshals Service, pending sentencing.

While in custody, Swift befriended Harold Benson, a fellow inmate and a suspect in a violent robbery unrelated to Swift's case. Benson confessed to Swift and two other inmates that he had participated in the robbery. Swift and the two other individuals relayed Benson's confessions to government investigators, who viewed the information as particularly reliable because the confessions corroborated descriptions of the robbery provided by Benson's co-defendants. Benson ultimately pled guilty, and the government believes that the confessions provided by Swift and the other prison witnesses weighed heavily in Benson's decision to enter a plea agreement. Based on the information Swift provided, the government filed a motion for a downward departure in Swift's case

under § 5K1.1 of the Sentencing Guidelines. The government's motion, filed five days before Swift's sentencing hearing, sought a downward departure but did not recommend the number of offense levels by which Swift's Guidelines calculation should be reduced.

The Court held a sentencing hearing on March 31, 2009, during which it found that Swift's pre-departure offense level was 29 and that his criminal history category was VI, yielding a Sentencing Guidelines range of 151 to 188 months.[1] Turning to the government's § 5K1.1 motion, the District Court found that Swift had provided timely, truthful information about the Benson robbery that aided the government in obtaining Benson's guilty plea. In light of Benson's violent criminal past, the Court concluded that Swift's cooperation placed him in danger of retaliation from Benson and that a departure was appropriate in Swift's case. The Court granted the government's motion but did not specify the extent of the departure. Instead, the Court stated that it would address the effect of the departure when it imposed a sentence later in the proceeding.

Immediately following the Court's deferral, defense counsel requested a departure of eight offense levels, which, if granted, would have resulted in a Guidelines range of 77 to 96 months. The Court then engaged Swift in a lengthy colloquy, after which the prosecutor recommended that Swift receive a downward departure of five offense levels. The government's proposed departure, if adopted by the Court, would have produced a Guidelines range of 100 to 125 months. The Court, still without specifying the number of levels it would depart under § 5K1.1, proceeded to

evaluate Swift's cooperation as a component of its § 3553(a) calculus. The Court indicated that it would vary below the original Guidelines range as a result of the assistance Swift provided with the Benson investigation:

> [A] factor that weighs heavily in my mind for varying from the otherwise advisory guideline range of 151 to 188 is the fact that Mr. Swift has cooperated and has given some fairly significant cooperation to the government, and I'm pleased to see that.

(App. at 95.) Then, in apparent reference to the § 3553(a) factors, the Court said,

> I believe the sentence I'm about to impose will adequately address all of those factors, including the cooperation that Mr. Swift has provided to the government.

(App. at 96.)

The Court imposed a sentence of 130 months, which fell below Swift's original Sentencing Guidelines range but above the ranges recommended by both the government and the defendant during their arguments on the § 5K1.1 motion. According to the Statement of Reasons ("SOR") accompanying Swift's criminal judgment, the District Court imposed a sentence below the original Guidelines range "pursuant to a 5K1.1 motion based on the defendant's substantial assistance." The SOR does not indicate whether Swift also benefited from a variance under § 3553(a). Swift filed this timely appeal from the District Court's judgment of sentence.

## II. Discussion[2]

We review for abuse of discretion the sentence imposed by the District Court.[3]

---

1. The 2008 edition of the United States Sentencing Guidelines Manual was used to calculate Swift's Sentencing Guidelines range.

2. The District Court possessed jurisdiction over Swift's criminal case pursuant to 18

U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

3. The government urges us to review Swift's challenge to the procedural reasonableness of his sentence for plain error because Swift did

*Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). Our application of this standard varies depending upon the issue subject to review. While we afford great deference to a district court's factual findings, we grant no deference to its legal conclusions. *United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008). "It is not that our standard of review changes with the issue raised. It is rather the amount of discretion vested in the District Court that varies, based on whether the asserted procedural error is grounded in law or in fact or in some mixture of the two." *United States v. Lofink*, 564 F.3d 232, 237 (3d Cir.2009). Our task on appeal is to ensure that the District Court's sentence is free from procedural error and that the ultimate sentence imposed is reasonable. *United States v. Starnes*, 583 F.3d 196, 215 (3d Cir.2009).

In the present matter, Swift attacks the District Court's sentence on two grounds. First, he alleges that the District Court improperly conflated its analysis of the downward departure motion with an assessment of the § 3553(a) factors and that the Court failed to specify whether Swift's sentence was the product of a § 5K1.1 departure, a § 3553(a) variance, or a combination of the two. As a result, Swift contends that the District Court imposed his sentence in a procedurally unreasonable manner. Second, he argues that the District Court did not accord substantial weight to the government's recommendation that he be granted a five-level downward departure under § 5K1.1. Swift contends that the Court's failure to explain why it rejected the government's recommendation renders his sentence substantively unreasonable.

We require district courts to follow a three-step procedure when imposing a sentence. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir.2006). First, the district court must calculate the defendant's Sentencing Guidelines range without regard to departure motions. *Id.* Second, the court must rule on the parties' motions for upward or downward departures. *Id.* At the conclusion of the second step, the district court must recalculate the defendant's Sentencing Guidelines range to reflect its ruling on the departure motions. *Id.* Third, the district court must consider the factors enumerated in § 3553(a) and exercise its discretion to craft a sentence that is appropriate under the circumstances of each particular case. *Id.*

We require district courts to adhere strictly to *Gunter's* tripartite sentencing framework, and we have held that, at the second phase of the sentencing proceeding, the district court must state the effect of a departure motion on the defendant's of-

not object to the District Court's failure to announce the extent of its downward departure at sentencing. However, Swift presented the merits of the departure motion to the District Court, and the Court represented that it would determine the extent of a departure prior to sentencing. Then, without advising the parties of how it would proceed, the District Court conducted a § 3553(a) analysis without quantifying the departure. We conclude that Swift could not have foreseen that the District Court would not rule on the extent of the departure, and, under these circumstances, Swift's discussion of the departure motion before the District Court

adequately preserved his claim for appellate review. *See United States v. Sevilla*, 541 F.3d 226, 231 (3d Cir.2008) (refusing to apply plain error review where the defendant raised certain arguments before the district court but the court neglected to address them when imposing a sentence); *cf. United States v. Titchell*, 261 F.3d 348, 351 (3d Cir.2001) (finding that defendant preserved objection to jury instructions because he presented argument regarding the instructions before the district court even though his claim on appeal "did not perfectly track his objection at trial").

fense level "as a part of calculating the applicable range" under the Sentencing Guidelines. *Lofink,* 564 F.3d at 238 (*quoting Wise,* 515 F.3d at 216). Hence, a district court abuses its discretion when it grants a departure motion but fails to recalculate the defendant's Sentencing Guidelines range before performing an analysis under § 3553(a). *See id.* at 235–36, 240–41 (faulting the district court for simultaneously addressing the defendant's departure motion and the § 3553(a) factors rather than performing separate analyses as required by *Gunter*); *see also United States v. Brown,* 578 F.3d 221, 226–27 (3d Cir.2009) (remanding case for resentencing because the district court addressed both the government's motion for an upward departure and the § 3553(a) factors but did not specify whether its ultimate sentence was the product of a departure or a variance).

The purpose of this three-step procedure is to create a record of the sentencing proceeding that clearly explains the rationale for the sentence that the district court imposes. *See United States v. Lychock,* 578 F.3d 214, 218 (3d Cir.2009) (requiring district courts to "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing"). The process ensures that the district court explains its sentence in a manner sufficient to allow us to ascertain whether the defendant received a substantively reasonable sentence in a procedurally reasonable manner. *See United States v. Levinson,* 543 F.3d 190, 197 (3d Cir.2008) ("[A]ppellate review, limited though it is by the abuse-of-discretion standard, ... requires district courts to plainly state the reasoning behind each sentence.").

In the present case, the District Court did not adhere to *Gunter's* sentencing framework. The Court properly calculated Swift's Sentencing Guidelines range at the first step of the sentencing procedure, but then improperly conflated the second and third steps of the analysis. At the second step, the government requested a § 5K1.1 downward departure of five offense levels while Swift sought an eight-level departure. The Court analyzed the merits of the request and granted the § 5K1.1 motion but did not specify the extent of its departure or recalculate Swift's Sentencing Guidelines range to incorporate its ruling. Instead, the Court considered the § 3553(a) factors in conjunction with Swift's cooperation and imposed a sentence below his original Guidelines range, without clearly stating whether it was exercising its departure authority under the Sentencing Guidelines or its discretion to vary below the Guidelines range under § 3553(a) and *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

Nor can we infer the District Court's intent from the record. The Court could have arrived at its sentence through one of two plausible avenues. It could have granted the § 5K1.1 motion but to a lesser extent than recommended by the government. Alternatively, it could have granted the government's proposed five-level departure but also varied upward from the Guidelines range resulting from that motion. The sentencing colloquy, however, does not establish which alternative the District Court adopted. The Court initially stated that it would "grant the government's motion for a downward departure," (App. at 78), but later explained that it would "vary[ ] from the otherwise advisory guideline range of 151 to 188 [months]," (App. at 95). The SOR reflects that Swift received a departure but does not describe how that departure affected the ultimate sentence. Neither the sentencing colloquy nor the SOR indicates that the Court intended to depart to a degree less than that

proposed by the government[4] or to vary upward from the post-departure Guidelines range.

We cannot undertake meaningful appellate review unless the District Court first identifies which of those alternatives it used in rendering its sentence. Our review of departure motions is limited to ensuring that the sentencing court properly apprehended its authority to entertain such motions and properly evaluated the defendant's eligibility for a departure. *See United States v. Yeaman,* 248 F.3d 223, 227 (3d Cir.2001) ("Our review [of departure motions] is limited to ensuring that the circumstances relied upon by the District Court are not so far removed from those found exceptional in existing case law that the sentencing court may be said to be acting outside permissible limits." (internal quotation omitted)); *cf. United States v. Batista,* 483 F.3d 193, 199 (3d Cir.2007) ("[D]iscretionary departures are not reviewable unless the District Court refused such a departure in violation of law."). Provided that the sentencing court properly understood its authority to consider a departure motion, we lack jurisdiction to review the extent of any departure the court chooses to grant. *United States v. Watson,* 482 F.3d 269, 271 n. 2 (3d Cir.2007); *United States v. Torres,* 251 F.3d 138, 145 (3d Cir.2001) ("[W]e lack jurisdiction to review the extent of a District Court's discretionary downward departure for substantial assistance to the government"). Swift's sentence is beyond our review if it represents a proper exercise of the District Court's discretionary authority to depart from the Guidelines range. On the other hand, to the extent that his sentence is the product of a variance, we may review the sentence for reasonableness in light of the § 3553(a) factors. *Brown,* 578 F.3d at 226. Thus, we cannot determine the scope of our appellate review without a clear statement from the District Court indicating whether its sentence resulted from a departure or some combination of a departure and a variance.[5] We will remand this matter for resentencing with instructions that the District Court state the effect of the government's departure motion on Swift's Guidelines range before conducting a § 3553(a) assessment.

## III. Conclusion

For the foregoing reasons, we will vacate the judgment of sentence and remand for resentencing. In so doing, we express no opinion regarding the ultimate reasonableness of the 130–month sentence that the District Court imposed in Swift's case. We will be in a position to review the reasonableness of Swift's sentence only after the District Court determines the appropriate sentence in accordance with *Gunter's* three-step framework.

---

4. A downward departure of two, three, or four offense levels would have produced a Guidelines range that incorporated the 130–month sentence.

5. Given the District Court's statement that it was granting the departure motion, we do not think that a variance alone is at issue here.