**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 13-1942

——————

UNITED STATES OF AMERICA

v.

CARLO DANIEL CASTRO,

Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. No. 2-10-cr-00732-001)
District Judge:  Honorable Harvey Bartle, III

Submitted under Third Circuit LAR 34.1(a)
on January 14, 2014

Before:  RENDELL, ROTH and BARRY, Circuit Judges

(Opinion filed: July 31, 2014)

———————

O P I N I O N

———————

**ROTH**, <u>Circuit Judge</u>:

Carlo Daniel Castro appeals a 60-month prison sentence on remand following an initial appeal before this Court. For the reasons that follow, we will affirm the District Court's decision.[1]

## I.    Background

### A.    Facts

Castro served as a policeman for 25 years and rose to become an Inspector—one of the highest ranking officers—in the Philadelphia Police Department. During this time, Castro was the recipient of numerous awards and accolades. Community leaders in Philadelphia, colleagues from the Philadelphia Police Department, and fellow inmates either testified or submitted letters in support of Castro's character. As we noted previously, however, Castro's "successes and substantial authority make his subsequent criminal behavior all the more disturbing and damning." *Castro v. United States*, 704 F.3d 125, 130 (3d Cir. 2013) (*Castro I*).

Castro's troubles began in 2006, when he invested his life savings— $90,000—in a real estate development project spearheaded by Wilson Encarnacion. After the investment deal failed, Castro's attempts to seek repayment from Encarnacion were unsuccessful. In 2010, Castro asked an acquaintance, Rony Moshe, if he was interested in hiring a collector to pressure Encarnacion to return his debt. Moshe, a previous FBI

---

[1] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and jurisdiction to review the sentence under 18 U.S.C. § 3742.

informant, reported this conversation to the FBI, which launched an undercover operation and instructed Moshe to secretly record conversations with Castro.

On April 7, 2010, Moshe recorded a series of telephone calls, during which he told Castro that he had found a collector. Castro indicated to Moshe that the collector should obtain $150,000—well over the $90,000 debt. Although Moshe told Castro that the collector would employ threatening measures, Castro only stated that he did not want to know the details or get "implicated into this." *Castro I*, S.A. at 1291. Castro also provided Moshe with Encarnacion's home address to demand the debt because his wife and child would be home and "they'll get scared." *Id.* at 346.

On June 4, 2010, an undercover FBI agent posed as the collector and told Castro that he had obtained $5,000 supposedly from Encarnacion (but actually from the FBI) by threatening to assault his wife. On June 11, Moshe gave Castro the $4,500 as partial payment from the $150,000. Moshe stated that Encarnacion was "scared to death," to which Castro replied, "Good, Good, Good." *Id.* at 361. Later, on July 20, Moshe gave Castro another $2,100. In early September 2010, Moshe informed Castro that Encarnacion was not paying and that the collector would "rough him up." *Id.* at 1369. Castro did not oppose this violence, but said that he did not want "the guy dead." *Id.* at 1376.

In September 2010, Castro also asked Moshe to help two business partners, Billy Wong and Alan Kats, collect a debt from a nightclub investment project. Wong and Kats met with an undercover FBI agent posing as the collector and authorized the use of violence to demand the money. The FBI agent later gave Kats and Wong several

3

thousand dollars supposedly collected from the debtor. Around that time, on September 21, Moshe informed Castro that the collector had obtained a "pretty big chunk" from Encarnacion by getting "pretty rough." *Id.* at 400-01. During this conversation, Castro told Moshe that he would have another collection job for $1.5 million. On November 5, 2010, however, Castro was arrested.

### B. Procedural History

On February 3, 2011, a grand jury in the Eastern District of Pennsylvania returned an indictment against Castro on ten counts in connection with several schemes to extort money from individuals. After a six-day trial in April 2011, the jury convicted him on one count of making a false statement to federal law enforcement officers in violation of 18 U.S.C. § 1001, acquitted him on one count of attempted collection of credit through extortionate means, 18 U.S.C. § 894, and hung on the remaining eight counts. To avoid retrial, Castro entered into a plea agreement, under which he pleaded guilty to one count of conspiracy to interfere with commerce by extortion in violation of 18 U.S.C. § 1951, and the government agreed to dismiss the remaining charges against him. The District Court sentenced Castro to concurrent sentences of 60 months for conspiracy to commit extortion and 18 months for his conviction by the jury for false statements.

On appeal, we reversed Castro's conviction for false statements and remanded the case for resentencing solely on conspiracy to commit extortion. *See Castro I*, 704 F.3d at 144. "Despite that exemplary handling of the always difficult work of crafting and explaining an appropriate sentence," we remanded because the District Court operated from the incorrect guidelines range. *Id.* at 143. We noted, nevertheless, that "[o]n

4

remand, the District Court is free to make its own reasonable application of the § 3553(a) factors and ultimately may choose to reject (after due consideration) the advice of the Guidelines and impose the same sentence." *Id.* at 143-44 (internal citation and quotation marks omitted). On March 15, 2013, the District Court applied the correct offense level and guidelines range and imposed the same sentence on the conspiracy to commit extortion charge: 60 months in prison.

## II.    Discussion

Castro raises three arguments on appeal. Castro first contends that his 60-month sentence is both procedurally and substantively unreasonable. Second, he argues that the government breached its plea agreement. And, finally, Castro asserts that the case should be assigned to a new judge if remanded.

### A.    Whether the Sentence was Unreasonable

"The abuse-of-discretion standard applies to both our procedural and substantive reasonableness inquiries." *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). We review a criminal sentence in two stages. *United States v. Negroni*, 638 F.3d 434, 443 (3d Cir. 2011). First, we review the sentence for procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence— including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). Second, assuming the District Court's sentencing was procedurally sound, we review whether the sentence was substantively reasonable. *Id.*

5

We keep in mind that the "touchstone of reasonableness is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc) (internal citations and quotation marks omitted). "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51.

Castro argues that the District Court did not conduct a de novo hearing—and thus was procedurally unreasonable—because it failed to acknowledge evidence of Castro's rehabilitation and merely re-read its statement from the prior sentencing hearing concerning both charges. There is no support in the record for this argument. The District Court conducted a new sentencing hearing, where both parties argued, witnesses testified, and Castro gave an allocution in what constitutes approximately an 80-page transcript. The District Court further recognized the hearing was only for the extortion charge. *Castro II*, S.A. at 21. At resentencing, the District Court correctly calculated the Guidelines range and took into account the § 3553(a) factors, specifically

> [T]he nature and circumstances of the offense, and the history and characteristics of you, the defendant, the seriousness of the offense, the need to promote respect for the law, the need to provide just punishment for the offense, the need to afford adequate deterrence to criminal conduct, and the need to protect the public from further crimes of you, the defendant.

*Id.* at 71. Moreover, contrary to Castro's assertion, the District Court acknowledged that it considered evidence of his rehabilitation, namely "the additional information which has been provided since" the first sentencing and "all of the letters which have been written on behalf" of Castro. *Id.* The District Court expressly cited these "complimentary

6

letters, including those from inmates and others at the Federal Correctional Institution" and from Castro's relatives, fiancée, and son. *Id.* at 72.

Notwithstanding these letters of rehabilitation, however, the District Court explained that given the seriousness of the crime and a strong need to promote respect for the law, both § 3553(a) factors, "there is still a compelling need to afford adequate deterrence to criminal conduct, particularly to deter others in law enforcement who may contemplate illegal conduct." *Castro II*, S.A. at 76. Given the District Court's careful analysis, we cannot say that the District Court committed procedural error; it calculated the offense level and range, considered the § 3553(a) factors in detail, and explained the reasons it deviated from the Guidelines range. *See Gall*, 552 U.S. at 51.

Turning to the substantive reasonableness of the sentence, we also hold that the District Court's 60-month sentence was substantively sound. Castro argues that the District Court erred by imposing the same sentence as it did at the original hearing, which resulted in an upward variance that was greater in the second sentence than it was in the first. He contends that the District Court failed to provide sufficient justification for why it imposed a sentence that was "greater than necessary" under 18 U.S.C. § 3553(a). We disagree. As a preliminary matter, we note that the District Court did not impose the same sentence: at the first sentencing, Castro received concurrent sentences of 18 months in prison for his conviction for having made a false statement and 60 months in prison for his guilty plea for conspiracy to commit extortion, and at the second sentencing he received only 60 months for the conspiracy to commit extortion. In addition, although the District Court deviated from the Guidelines range, as Castro points out with several

7

numerical statistics, we have previously recognized that "there is no mathematical formula for determining whether a district court's justifications for a variance are sufficient" so long as "an adequate justification is provided on the record." *United States v. Levinson*, 543 F.3d 190, 196 (3d Cir. 2008).

We find the District Court's justifications adequate, even taking into account that a higher degree of variance requires a greater justification. In particular, the District Court emphasized that Castro "was agreeable to the use of violence to collect a debt." *Castro II*, S.A. at 76. The District Court also cited deterrence as a major consideration, stating that "[i]t is necessary for the Court to signal to the police and to the citizenry of Philadelphia that criminal conduct by police officers will not be tolerated and will be dealt with in the most severe manner." *Id.* Given the District Court's explanation, we are unable to conclude that "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Tomko*, 562 F.3d at 566, 568. Thus, we find that the District Court did not abuse its discretion in imposing the sentence.

### B. Plea Agreement

Castro also argues that the District Court plainly erred by failing to find that the government breached its plea agreement with Castro. Castro contends that the government recommended a 37-month sentence, which was four months above the guidelines range of 27-33 months agreed upon by the parties.

Because Castro did not object to the District Court's failure to *sua sponte* consider the government's breach of the plea agreement, we review the District Court's

8

determination only for plain error. Castro must demonstrate that the error was prejudicial—that, but for the error, the sentence would have likely been different. *See United States v. Thornton*, 306 F.3d 1355, 1358 (3d Cir. 2002).

We find that it is unnecessary here to evaluate the terms of the plea agreement to determine whether the government breached a promise to recommend 27-33 months. Regardless of whether the error was committed, Castro failed to present evidence that the error was prejudicial and would have affected the outcome of the proceedings. *See United States v. Russell*, 564 F.3d 200, 203-04 (3d Cir. 2009). The District Court emphasized in its sentencing that "[n]o sentence below 60 months would be sufficient." *Castro II*, S.A. at 78. Thus, we find that the record demonstrates that District Court's decision to impose a 60-month sentence would have been unaffected by the government recommending 27-33 months, instead of the 37 months it recommended in this case. Thus, the District Court did not plainly err.

## III. Conclusion

For the foregoing reasons,[2] we will affirm the District Court's decision.

---

[2] Because we affirm, we need not address Castro's argument that, on remand, his case should be assigned to a new judge.