**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2992
_____

UNITED STATES OF AMERICA

v.

ADOLPHUS WILLIAM CATO,
                                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 2-14-cr-00315-001)
District Judge:  Hon. Wendy Beetlestone
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 11, 2017
_____

Before:  VANASKIE, RENDELL, and FISHER, *Circuit Judges*

(Filed December 20, 2017)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

VANASKIE, *Circuit Judge.*

Adolphus William Cato filed a Notice of Appeal in this Court on June 27, 2016, claiming the District Court erred in its intended loss calculation for Cato's sentencing Guidelines range. The government contends that we cannot hear Cato's appeal because his plea agreement contained an appellate waiver that precludes our review. Even if we could hear the merits of the case, the government argues that the District Court's calculation was correct. We need not decide the appellate waiver issue because it is clear that the District Court properly calculated the loss attributable to Cato's criminal conduct. Thus, we will affirm the judgment of sentence entered on June 22, 2016.

## I.

On August 25, 2015, Cato pled guilty to seven charges stemming from efforts undertaken by him and his co-conspirators to defraud banks, businesses, and individuals by manufacturing and using fraudulent drivers' licenses along with counterfeit checks to obtain funds. Specifically, Cato pled guilty to conspiracy to commit bank fraud, in violation of 18 U.S.C. § 371, five counts of bank fraud, in violation of 18 U.S.C. § 1344, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028(a)(1).

In the plea agreement, the parties stipulated that they disagreed over the amount of intended loss. During the plea colloquy, the government stated that the parties would "advocate [for the] intended loss amount at sentencing." (Supp. App. at 15.) Also during the plea colloquy, the District Judge advised Cato of his ability to appeal his sentence in only very limited circumstances:

> if the Government appeals from the sentence imposed, if [the court] impose[s] a sentence which exceeds the statutory maximum, if [the court] depart[s] upward from the applicable guideline range, or if [the court] impose[s] an upward variance above the sentencing guideline range that [the court] determine[s], or on the grounds that [his] attorney provided constitutionally ineffective assistance of counsel.

(*Id.* at 23.) Cato acknowledged these limitations on this right to appeal.

On January 29, 2016, the District Court held an evidentiary hearing to determine the intended loss amount attributable to Cato. If the amount totaled more than $250,000, Cato's Guidelines range would increase 12 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(G). If the amount was less than $250,000, there would be a 10-level increase. Cato stipulated that his offenses amounted to at least $233,923.00 in intended loss, while the government argued that the amount was greater than $250,000 due to the inclusion of certain checks that Cato contended should not be considered part of the intended loss. In particular, the government presented evidence of checks cashed by "runners" that totaled $12,780.16 based on a co-conspirator's testimony.[1] The government's intended loss calculation included an additional $8,344.50 based upon five uncashed checks found on a ledger stored in co-conspirator Jared Hayes' VersaCheck computer file. Cato argued that the ledger amount should not be included in the Guidelines calculation because it reflects duplicate checks that he never intended to cash. The government argued that inclusion of the duplicate, uncashed checks was proper because the *modus operandi* of the fraudulent scheme was to create multiple copies of

---

[1] On appeal, Cato does not contest the inclusion of the $12,780.16 in checks cashed by certain runners.

checks bearing the same check numbers, amounts and payees for distribution to multiple runners to be cashed. The District Judge deferred her findings until Cato's sentencing on June 21, 2016.

At sentencing, the District Court followed the government's calculation and applied a 12-level increase to Cato's base offense level of 7.[2] Factoring in other calculations and a downward departure for acceptance of responsibility, Cato's total offense level was 22 and his Criminal History Category was III. In light of the fact that the aggravated identity theft conviction required a mandatory consecutive prison term of 24 months pursuant to 18 U.S.C. § 1028A(a)(1), Cato's effective Guidelines range was 75 to 87 months in prison.[3] Cato was sentenced to 56 months on the bank fraud counts, followed by a mandatory consecutive sentence of 24 months for aggravated identity theft, for a total of 80 months. Cato timely appealed.

## II.

The District Court had subject matter jurisdiction under 18 U.S.C. § 3231. We have jurisdiction over Cato's appeal from the final decision of the District Court under 28 U.S.C. § 1291. "We review the validity of appellate waivers *de novo*." *United States v.*

---

[2] Adding the $12,780.16 and the $8,344.50 to the stipulated amount of $233,923.00 results in a total intended loss of $255,047.66. The District Court noted that government's numbers erroneously included an extra $5,000, and the government amended the total intended loss amount to $250,047.60. Without the ledger amount, however, the total intended loss would be $241,703.10.

[3] Had the District Court agreed with Cato that the intended loss was less than $250,000, the resulting effective Guidelines imprisonment range would have been 65 to 75 months.

*Jackson*, 523 F.3d 234, 237 (3d Cir. 2008). We review the District Court's sentencing Guidelines calculation for clear error. *United States v. Titchell*, 261 F.3d 348, 353 (3d Cir. 2001) ("Our review of the District Court's interpretation and application of the Sentencing Guidelines is plenary, but we must accept the District Court's factual conclusions unless they are clearly erroneous.").

## III.

Cato's appeal rests on the assertion that the District Court incorrectly calculated the intended loss amount attributable to him, and his subsequent sentencing Guidelines range, by including $8,344.50 from a ledger that included uncashed checks that were duplicates of other cashed checks that were also included in the intended loss calculation. The government raises two arguments: (1) that Cato waived appellate review and his appeal does not fall within an enumerated exception to the appellate waiver; and (2) that the District Court correctly calculated the intended loss amount by including the $8,344.50 ledger amount.

In a fraud case such as this one, the Guidelines range is largely determined by the amount of the intended loss attributable to the defendant. *United States v. Geevers*, 226 F.3d 186, 190 (3d Cir. 2000). Intended loss, however, does not always mean potential loss. *See Titchell*, 261 F.3d at 354 (emphasis in original) ("[T]he rule established by *Geevers* is that intended and potential loss *may* be the same (and a district court can draw an inference to that effect), but it is error for a district court simply to equate the two without 'deeper analysis.'"). Generally speaking, "[i]ntended loss refers to the

5

defendant's subjective expectation, not to the risk of loss to which he may have exposed his victims." *United States v. Yeaman*, 194 F.3d 442, 460 (3d Cir. 1999).

Our decision in *Geevers* is instructive. There, Geevers pled guilty to bank fraud stemming from a check kiting scheme. *Geevers*, 226 F.3d at 188. The intended loss was greater than actual loss, and Geevers argued that the former amount should not be attributable to him "because a passer of worthless checks could not possibly abscond with the full face amount of his worthless deposits." (*Id.*) We rejected his argument, noting that even an impossible amount can be counted as intended loss because "a sentencing court may plausibly conclude that a defendant like Geevers would likely have taken the full amount of the deposited checks if that were possible." (*Id.* at 193.) Thus, "the [sentencing] Court was free to accept the loss figure in the absence of persuasive evidence from Geevers that his intent was to steal a lesser amount." (*Id.* at 194.)

Cato argues that there was no proof that the conspirators intended to cash duplicate checks totaling $8,344.50 found in Hayes' computerized VersaCheck file. Therefore, according to Cato, it was error for the District Court to include these checks in the loss calculation, and his net offense level should accordingly be reduced by two levels, from 22 to 20. The government responds that even though the checks were duplicates, they were properly counted "in light of the evidence that the *modus operandi* of the scheme included the creation of multiple identical or nearly identical copies of the same fake checks that were then cashed or intended to be cashed by runners at multiple different banks." (Government Br. at 33.)

In rendering her decision, the District Court recited the proper standard from *Geevers* that she must conduct a "deeper analysis" before equating potential loss and intended loss. (Supp. App. at 281-82.) As part of this "deeper analysis," she "looked at the charts, looked at the arguments, and did a detailed analysis of [her] own." (*Id.* at 282.) She also defined intended loss as we did in *Yeaman*. (*Id.* at 281.) As a result of her analysis, the District Court decided to count the uncashed duplicate checks.

The District Court did not commit clear error by counting the checks from the computer ledger. The District Court noted that the government had presented significant evidence about why the checks should be counted, and she conducted a thorough analysis to reach her conclusion. Cato presents no persuasive evidence to refute the claim that the duplicate checks assisted the co-conspirators in the scheme. Here, as in *Geevers*, the District Court's calculation of the intended loss was plausible based on the circumstances of the case.

## IV.

Accordingly, Cato's challenge to the loss calculation fails. As he does not otherwise challenge the substantive reasonableness of the 80 month prison term or any other aspect of his sentence, we will affirm the Judgment of the District Court entered on June 22, 2016.